(101 South. 213)

No. 24610.

## MALCZEWSKI v. NEW ORLEANS RY. & LIGHT CO.

(June 27, 1924.)

*(Syllabus by Editorial Staff.)*

1. Civil rights ⬅=⇒8—Street railway had right to exclude certain automobiles from parking grounds.

Rev. St. §§ 457, 458, relating to right to admission to public places, etc., do not apply to prevent a street railway maintaining a place for parking automobiles near a park, from excluding therefrom any one, no fee being charged for privilege of parking, but it should not exclude one therefrom in a manner so as to humiliate him in presence of others, and one so excluded is entitled to recover.

**2. Civil rights ⊚⊸13 — $2,500 damages excessive.**

A verdict for $2,500 to one humiliated by her exclusion from parking ground was excessive, though including punitive damages, and should be reduced to $500.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Eugenia Malczewski against the New Orleans Railway & Light Company and others. Judgment for plaintiff, and named defendant appeals. Judgment amended and affirmed.

Benj. W. Kerman, of New Orleans, for appellant.

Jewell A. Sperling, of New Orleans, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

OVERTON, J: In 1915 and 1916 some of the automobile owners in this city were running in opposition to the street cars, and formed an organization known as the Jitney Drivers' Association. Plaintiff was secretary of that association. During the latter part of 1915, she herself owned a jitney automobile, and was popularly known as the "Jitney Queen."

The New Orleans Railway & Light Company, one of the defendants herein, leased from the Railways Realty Company, another of the defendants, a plot of ground on the shores of Lake Pontchartrain, and operated there an amusement park, known as Spanish Fort. The New Orleans Railway & Light Company maintained an inclosure adjoining this park. This inclosure formed no part of the park, but was maintained for the purpose of providing a place in which the patrons of the park, who might visit it in automobiles, could put their cars, should they see proper. The New Orleans Railway & Light Company, however, adopted a rule that cars operated as jitney automobiles should not be allowed entrance into the inclosure, though their occupants were permitted to visit the park. No fee was charged for parking in the inclosure, nor was any admission charged for entering the park. The New Orleans Railway & Light Company received its compensation for maintaining the park by taking people to it over its railway lines and by leasing privileges in it to those who desired to conduct, for compensation, amusements there, for the entertainment of the people. Indirectly, the value of the privileges that the company had to lease was increased by the inclosure provided for the accommodation of those who visited the park in automobiles instead of in street cars.

On the evening of May 12, 1916, plaintiff was in the business section of this city with her husband and some friends. Her husband had business to attend to before returning home, and suggested to plaintiff that she take a drive while he was attending to the business. It was agreeable to plaintiff's friends to go driving, and plaintiff, not having an automobile of her own, hired one for that purpose. The automobile selected was engaged in the jitney service, and had upon it marks so indicating. After hiring the car, plaintiff took charge of it as driver, and proceeded to take her friends to the park at Spanish Fort. This was several months after she had quit driving a jitney, as a business, and after she had severed her connection with the Jitney Drivers' Association. Finally, she reached the inclosure for parking cars, adjoining the park. She testified that she did not know of the regulation concerning jitneys. There was no sign, at the entrance to the parking grounds, prohibiting the parking of jitneys in them. On arriving at Spanish Fort she saw other cars driving into the inclosure, and she proceeded to drive into it for the purpose of parking her car. The inclosure was in charge of a Mr. Richardson, who was the agent of the New Orleans Railway & Light Company. As she

started to follow other automobiles into it, Richardson forbade her to enter, addressing her in a loud voice. What occurred is best told in the words of plaintiff, and of the witnesses who testified on the subject. Plaintiff testifies that:

"As we got to where this man, Mr. Richardson, was standing I didn't see him until he stopped me, and as we got there, why he let this car go by (referring to another car), and he looked around at the car (referring to her car), and he said, 'Hey, hey, you stop; you can't come in here.' I couldn't say anything for a minute, and I said, 'Well, I wonder why I can't come in here; what's the matter?' 'I know you; you can't come in here.' I turned around and looked at my friends in the back and I didn't know what to say. 'Well,' I said to my friends, 'I don't know what's the matter.' I said, 'There are other cars going in here; why can't I drive in here?' He said, 'Well, you can't come in here, and, if you do, I will have an affidavit made against you.' I said, 'I will go in anyhow,' and he said he would make an affidavit against me. I said: 'Well, I better not say much more.' I was so nervous. He said, 'I am an officer of the New Orleans Railway & Light Company, and I am going to do my duty; you can't come in here.' So I decided the best thing to do, as I always considered myself a lady, was to back out and come back to town."

And B. Giordano, one of the witnesses for plaintiff, and formerly a jitney driver, testified concerning what occurred, as follows:

"I had my car close over there, and I was sitting in the front of my car, and several cars were passing by, when I saw a lady driving a machine, and there were two cars, and she kind of slacked the machine up, and some fellow come and watched this woman and said, 'Hey, hey, stop!' he said, 'You can't come in here.' He said, 'You have to turn around and go right back.' She kind of hesitated a little, looked around kind of stung; then she says, 'Why can't I drive in with my car?' He said, 'You can't come in.' She said, 'The other cars are going in.' He said, 'You can't come in; you got a name on that car; you turn around and go back; otherwise I will put you under. arrest, make an affidavit against you;' and she had to turn around in a kind of small space. Then she turned around and backed out, and she came back and got my name."

156 La.—27

Gus Fedele another witness for plaintiff testified as follows:

"On May 12, 1916, I was sitting on the rail at the gate entrance to Spanish Fort, talking to Mr. Richardson, and in the meantime, several cars came along and went on and parked, and Mrs. Malczewski came along, and Mr. Richardson was standing there talking to me, and he spied her coming. He walked out and said, 'Hold; you can't come in here.' He said, 'I know you; you are the Jitney Queen.' She wanted to know why she couldn't go in, and he said, 'You simply can't come in here.' Then she said, 'I am going to go in;' and he said, 'If you do, I am going to put you in jail and make a charge against you.' In the meantime, Mrs. Malczewski turned around in a nervous sort of way and backed up and drove off."

Defendants offered no evidence as to what occurred at the entrance to the parking ground. Richardson, who apparently was the only witness they had as to what occurred, had left the parish of Orleans; and, at the time of the trial, was in an enjoining parish. An effort was made to secure his presence at the trial by subpœnaing him, but in vain. His depositions were not taken.

Plaintiff, having been denied admission to the parking grounds, and in the manner shown above, instituted this suit to recover against the New Orleans Railway & Light Company, the proprietor of the park, and its lessor, the Railways Realty Company, judgment in solido, for damages amounting to $20,000. Of this sum $10,000 is claimed as punitory and exemplary damages, and the balance as damages due for the humiliation suffered by her, and the insult offered her. Each of the defendants answered denying liability. The case was tried by jury, and a verdict returned against the New Orleans Railway & Light Company alone for $2,500. That company only has appealed. Hence, the issue is now one only between plaintiff and the New Orleans Railway & Light Company.

Opinion.

Counsel for plaintiff in the course of his argument contends that his client was de-

prived of a civil right secured to her by the Revised Statutes of this state, and cites in support of his position sections 457 and 458 of those statutes. Section 457 reads:

"Except in the cases enumerated in section four hundred fifty-six of this act, no person shall be refused admission to or entertainment at any public inn, hotel or place of public resort within the state."

Section 458 provides that:

"All licenses hereafter granted by this state, and by all parishes and municipalities therein, to persons engaged in business or keeping places of public resort, shall contain the express condition that the place of business or public resort shall be open to the accommodation and patronage of all persons without distinction or discrimination on account of race or color, and any person who shall violate the condition of such license shall, on conviction thereof, be punished by forfeiture of his license, and his place of business or public resort shall be closed; and, moreover, he shall be liable at the suit of the person aggrieved, to such damages as he shall sustain thereby, before any court of competent jurisdiction."

The exceptions referred to in section 457, quoted above, and enumerated in section 456, justifying the proprietor in refusing admission to one demanding it, or in excluding him from the place after admission, are: When such person shall refuse, on demand, to pay the customary charge, or when such person is of infamous character, or when he shall be guilty, after admission, of gross, vulgar, or disorderly conduct, or shall commit any act tending to injure the business of the proprietor, prescribed for the management of the business, after those rules have been made known. These sections of the revised statutes were supplemented by Act 84 of 1873, but the act of 1873 was repealed by Act 128 of 1902, leaving the law as above stated.

[1] While the law is as above stated, yet we are not of the opinion that it has the application contended for by plaintiff to the facts disclosed by the record in this case. There is nothing in the sections of the Revised Statutes cited, or in any other enactment, constitutional or statutory, of which we have knowledge, which had the effect of preventing the New Orleans Railway & Light Company from maintaining a parking ground for such automobiles as it saw proper to accommodate, and from excluding such as it saw proper to exclude. No fee was charged for the privilege of parking in the inclosure. It would be unreasonable, under the circumstances, to require, as a condition to the right of the company to maintain the inclosure gratis to drivers and owners of automobiles, that it permit all such drivers and owners to park their cars therein, except such as should come within the exceptions mentioned above. The mere denial to plaintiff of the privilege of parking her car in the inclosure did not prevent her from parking it elsewhere and from visiting the pleasure grounds or park proper, had she desired to do so.

[2] While the New Orleans Railway & Light Company had the right to deny plaintiff the privilege of parking her car in the inclosure, yet it was called upon, in exercising that right, to do so in a proper manner, and not in such a one as, necessarily and needlessly, would have the effect of humiliating plaintiff in the presence of her friends and of those near by. In this respect we think that the New Orleans Railway & Light Company failed. The company was engaged in conducting a pleasure resort, to which the public were invited. There was no sign at the entrance of the inclosure, adjoining the park, indicating that the former was not open for parking purposes to the general public visiting the resort, or that automobiles used in the jitney service could not be parked there. Apparently, plaintiff was unaware of any rule that would prohibit her from parking the car, hired by her, there. She was then not even engaged in the jitney service and had not been for several months. She saw other automobiles driving into the in-

closure. She had a right to think that she could park her car there. The New Orleans Railway & Light Company had no right, under the circumstances, to stop plaintiff in the offensive and insulting manner adopted by its agent for that purpose—a manner which could have no other effect than that of humiliating her in the presence of her friends, and of those near by. On this phase of the case, which plaintiff distinctly sets out in her petition, we think that she is entitled to recover. Civil Code, arts. 2315 and 2317. However, while plaintiff is entitled to recover, yet the verdict of the jury rendered in her favor is clearly excessive. In our view $500 would be ample, and is the proper amount to allow.

For the reasons assigned, the judgment appealed from is amended by reducing the amount allowed as damages to $500; and, as thus amended, it is affirmed; plaintiff to pay the costs of this appeal.