The question presented for determination in this case is whether a person, who has been admitted to a theatre after presentation of a ticket purchased from the proprietor, may maintain an action to recover damages for the humiliation and mental anguish sustained by him because of his subsequent ejection from the theatre on the sole ground that he is a cripple. A *Page 470 
majority of the court has answered this question in the negative. I cannot agree for two reasons, (1) because the plaintiff has been specifically given, by section 459 of the Revised Statutes, a cause and right of action which entitles him to redress and (2) because I am of the opinion that, even in the absence of such a statute, plaintiff has a cause of action, under Article 1934 of the Civil Code, to recover for the mental anguish and humiliation sustained by him resulting from defendant's breach of the contract. I shall hereafter discuss these reasons in their reverse order.
The primary contention of the defendant in the instant matter is that it is the well-settled jurisprudence of the United States and this State that the proprietor of a theatre, being engaged in a private enterprise, has the right, in the absence of a statute providing otherwise, to refuse admittance to anyone without assigning reason therefor and that, since it has been established that a ticket to a theatre is a license revocable at the will of the proprietor, he has the legal right to eject any person even after admittance to the theatre, without assigning cause, upon refunding the admission price. It is said by defense counsel that, in the latter instance, the only damages recoverable for the revocation of the license, provided undue force and violence is not used in ejecting the patron, is the pecuniary loss suffered by such patron (which is the price of admission).
At the outset, I concede that, in the absence of statute, it is well settled that the operation of a theatre is a private enterprise; that the proprietor has the right to select the persons with whom he desires to do business and that he may refuse to admit anyone into his theatre without assigning cause therefor. But I do not subscribe to the doctrine that the proprietor, after admitting a person to the theatre for valuable consideration, may summarily eject him, in the absence of just cause, without rendering himself liable for all other damages sustained by the party so ejected in addition to the actual pecuniary loss.
The majority in this case seem to be of the view that plaintiff has conceded that the measure of damages, which would be recoverable by him in the absence of a special statute, is limited to a refund of the price of admission. I do not understand that plaintiff's counsel has ever made such a concession. On the contrary, during oral argument of the case, counsel, while recognizing that this court had announced such a view in the case of Gorman et al. v. United Theatres, La.App., 177 So. 463, told us that he hoped to convince us that the statement to that effect, appearing in the Gorman case, was without bearing on the issue there presented and that it did not represent a sound conception of the law of this state. And counsel further pointed out that this doctrine of "revocable license" had never before been maintained by our courts.
An examination of the pertinent cases decided in Louisiana on this subject confirms counsel's contention. In Russo v. Orpheum Theatre Realty Co., 136 La. 24, 66 So. 385, L.R.A.1915B, 1119, the question presented was whether a theatre owner was liable to a patron, who had been ejected from the theatre on the ground that he had created a disturbance. The court, in affirming the judgment of the lower court dismissing plaintiff's suit, based its decision on the evidence submitted at the trial which it found was sufficient to establish that the ejection was justified as plaintiff's conduct was disorderly.
In Planchard v. Klaw Erlanger N.O. Theatres Company,166 La. 235, 117 So. 132, 60 A.L.R. 1086, the Supreme Court awarded $500 damages to a patron, who had been ejected from a theatre, holding that defendant had failed to establish its contention that plaintiff had been expelled because he was creating a disturbance.
Nothing is said in either of the foregoing cases which would indicate that the court was of the opinion that the theatre owner had the right to eject a patron without assigning a valid reason therefor.
In Gorman v. United Theatres, supra, the question presented was whether the plaintiffs were entitled to recover damages from the owner of the Folly Theatre because of the alleged unlawful ejectment of their minor son. The defense to the suit was that plaintiffs' son had been ejected, without undue force, because he was guilty of disorderly conduct. Finding that the evidence preponderated overwhelmingly in favor of the defense, we reversed the judgment of the trial court, which was in plaintiffs' favor, and dismissed their suit. However, it is stated in that opinion that the law is well settled that a theatre ticket is a mere license which may be revoked at the pleasure of the proprietor of the theatre without giving any reason therefor and that the only damages recoverable in a suit *Page 471 
for breach of contract will be the price of admission. 62 Corpus Juris, page 862, is cited in support of this conclusion and also the case of Russo v. Orpheum Theatre Realty Company, supra.
As above pointed out, there is nothing contained in the opinion of the Supreme Court in the Russo case which would warrant its citation as an authority sustaining the view expressed in the Gorman case. In fact, the declaration in that matter is merely obiter dicta as it was wholly unnecessary to the conclusion reached on the facts. And, while the pronouncement is fully sustained by common law authority, it is directly in conflict with the law of Louisiana with respect to the kind and quantum of damages recoverable for breach of contract.
The doctrine of the common law states that a theatre ticket is a license, revocable at the will of the proprietor, resulted from an approval of a theory evolved by the English courts in Wood v. Leadbitter (1845) 13 Mees W. 838, 153, Eng. Reprint, 351, 14 L.J.Exch. N.S. 161, 16 Eng. Rul.Cas. 49, which was predicated on a technical view of the English law of licenses on real property. This doctrine has now been discarded in England (see Hurst v. Pictures Theatres, (1915) 1 K.B.(Eng.) 1, 8 B.R.C. 856, 83 L.J.K.B.,N.S., 1837, 111 L.T.,N.S., 972, 30 Times L.R. 642, 58 Sol. Jo. 739, Ann.Cas.1916D, 457), but it has been generally followed by the American courts. See Marrone v. Washington Jockey Club, 1913, 227 U.S. 633, 33 S.Ct. 401, 57 L.Ed. 679, 43 L.R.A., N.S., 961, and also decisions of the courts of Massachusetts, Michigan, Missouri, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Tennessee, Virginia and Washington cited in 30 A.L.R. page 952.
In Marronne v. Washington Jockey Club, supra, the Supreme Court of the United States found that an action of trespass would not lie for forcibly preventing the plaintiff from entering a race track operated by the defendant, or for ejecting him without cause, for the reason that, as holder of a ticket, he obtained no right in rem upon the property and that his only right was to sue upon the contract for its breach. And many of the common law states have adopted the rule set forth in 62 Corpus Juris, verbo Theatres and Shows, page 862 that, in an action for breach of contract, the measure of damages recoverable is the money paid for the ticket or amount of pecuniary loss actually suffered by the ejected patron and that there can be no recovery of compensatory damages for the humiliation or mental suffering sustained. See Finnesey v. Seattle Baseball Club, 122 Wn. 276, 210 P. 679, 30 A.L.R. 948 and an annotation in 30 A.L.R. pages 951 through 964, where the applicable authorities on this question are cited and discussed.
However, the law in Louisiana, unlike that which obtains in the common law states, is that the measure of damages recoverable for breach of a contract of this sort is not confined to the actual pecuniary loss suffered but that redress will also be allowed for mental anquish, humiliation and the like which has been sustained as a consequence of the breach.
Article 1934 of the Civil Code provides, in part, as follows:
"Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach or the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:
* * * * *
"3. Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contracthas for its object the gratification of some intellectualenjoyment, whether in religion, morality or taste, or someconvenience or other legal gratification, although these are notappreciated in money by the parties, yet damages are due fortheir breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule * * *." (Italics mine.)
It has been uniformly held under this Article, beginning with the decision in Lewis v. Holmes, 109 La. 1030, 34 So. 66, 61 L.R.A. 274 (the famous case of the bride's trousseau), that mental anguish, humiliation, etc., form an element of damages recoverable in an action for breach of contract. See also Johnson v. Levy, 118 La. 447, 43 So. 46, 9 L.R.A., N.S., 1020, 118 Am.St.Rep. 378, 10 Ann.Cas. 722, and the *Page 472 
recent case of Jiles v. Venus Community Center, etc., Ass'n,191 La. 803, 186 So. 342.
The obiter dicta contained in Gorman v. United Theatres, supra, is obviously in discord with the foregoing authorities and, therefore, should be retracted as contrary to the law of this state.
In the case at bar, the sole ground for which plaintiff was ejected from the theatre is that he is a cripple. Plaintiff's infirmity is due to the fact that his right leg is two and one-half inches shorter than his left, which necessitates the use of a crutch in walking. Despite this, the evidence shows that plaintiff is not unduly hampered by his condition; he is able to drive an automobile and does practically everything that a wholly sound person is able to perform.
Defendant says, however, that its rule respecting the exclusion of cripples on certain days (when business is heavy) is a most reasonable one forasmuch as it is designed for the protection of all of its patrons. And it is pointed out that, in case of emergency, the presence of cripples in its theatre would operate as a hazard to its other patrons as well as the cripples themselves. Assuming that the reason for the rule is well founded, it cannot form the basis of a legal excuse for defendant's action in this case since plaintiff was without knowledge of the existence of the rule when he purchased his ticket and was admitted into the theatre. If defendant wished to have legal protection in the enforcement of the rule (assuming it to be a reasonable one), it should have published or displayed it or otherwise brought it to plaintiff's attention before he and his wife were admitted into the theatre. See Malczewski v. New Orleans Ry. Light Co., 156 La. 830, 101 So. 213, 35 A.L.R. 553, where the Supreme Court observed that, in order for an owner of a parking lot to which the public was invited to be accorded the right to invoke a rule prohibiting the parking of automobiles used in jitney service, it was essential that prior notice of the rule be given.
For the foregoing reasons, I am of the opinion that, even in the absence of statute, plaintiff would be entitled to recover damages for the humiliation and mental anguish sustained by him as a result of defendant's breach of contract. But, apart from this, I think that the relief sought in this case is specially covered and authorized by sections 456, 457, 458 and 459 of the Revised Statutes.
Counsel for defendant maintain that the above cited sections of the Revised Statutes are without pertinence to the case. It is said that those laws apply only to racial or color discriminations, since they are mere copies of the provisions of Act No. 38 of 1869, which was a statute passed for the specific purpose of enforcing the provisions of Article 13 of the Constitution of 1868; that Article 13 of the Constitution of 1868 had for its purpose the prevention of racial discrimination and that, inasmuch as that constitutional provision was omitted from the Constitution of 1879 and subsequent constitutions, the omission had the effect of repealing Act No. 38 of 1869 and the similar provisions of the Revised Statutes. The main opinion in this case sustains this proposition. I believe that the conclusion is unsound for the reasons hereafter set forth.
In the first place, there is nothing contained in the language used in sections 456, 457, 458 and 459 of the Revised Statutes which authorizes a holding that these sections are intended to apply solely to discriminations against persons on account of their race or color. The sections read as follows:
"Sec. 456. All persons engaged within this State in the business of common carriers of passengers shall have the right to refuse to admit any person to their railroad cars, street cars, steamboats or other water crafts, coaches, omnibusses, or other vehicles, or to expel any person therefrom after admission, when such person shall, on demand, refuse or neglect to pay the customary fare, or when such person shall be of infamous character, or shall be guilty, after admission to the conveyance of the carrier, of gross, vulgar or disorderly conduct, or shall commit any act tending to injure the business of the carrier, prescribed for the management of his business after such rules and regulations shall have been made known; Provided, Said rules and regulations make no discrimination on account of race or color, and they shall have the right to refuse any person admission to such conveyance when there is not room or suitable accommodations; and except in cases above enumerated, all persons engaged in the business of common carriers of passengers are forbidden to refuse admission to their conveyance, or expel any person therefrom whomsoever."
"Sec. 457. Except in the cases enumerated in section four hundred and fifty-six *Page 473 
of this act, no person shall be refused admission to or entertainment at any public inn, hotel or place of public resort within the State."
"Sec. 458. All licenses hereafter granted by this State, and by all parishes and municipalities therein, to persons engaged in business or keeping places of public resort, shall contain the express condition that the place of business or public resort shall be open to the accommodation and patronage of all persons without distinction or discrimination on account of race or color, and any person who shall violate the condition of such license shall, on conviction thereof, be punished by forfeiture of his license, and his place of business or of public resort shall be closed; and, moreover, he shall be liable at the suit of the person aggrieved, to such damages as he shall sustain thereby, before any court of competent jurisdiction."
"Sec. 459. For a violation of any of the provisions of the four hundred and fifty-sixth and four hundred and fifty-seventh sections of this act, the party injured shall have a right of action to recover any damages, exemplary as well as actual, which he may sustain before any court of competent jurisdiction."
The foregoing provisions strike me as being so clear and concise that resort to familiar rules of interpretations and construction is wholly unnecessary for the purpose of ascertaining the intent of the Legislature. Section 456 prohibits common carriers from refusing to admit any person to their railroad cars, etc., or to expel anyone after admission, unless such person refuses to pay the customary fare or is of infamous character or shall be guilty of disorderly conduct after admission, or shall commit any act tending to injure the business of the carrier "prescribed for the management of his business after such rules and regulations shall have been made known" provided such rules and regulations shall make no discrimination on account of race or color.
Section 457 states, in substance, that no person shall be refused admission to any public inn or other place of public resort except for the reasons set forth in section 456. Section 458 refers to the provisions which shall be included in licenses issued to persons engaged in keeping places of public resort. And section 459 provides that the party injured by reason of a violation of any of the foregoing provisions shall have a right to action to recover damages.
Therefore, in view of the plain and unambiguous language employed in the above quoted sections of the Revised Statutes, there would be nothing of substance to support a conclusion that the provisions were intended to apply only to racial discriminations were it not for the contention that the sections are dependent upon the provisions of Article 13 of the Constitution of 1868 for their validity. An investigation of this contention discloses that sections 456, 457, 458 and 459 of the Revised Statutes are substantially the same provisions as are found in Act No. 38 of 1869, (sections 1 through 4) the title of which reads "To enforce the Thirteenth Article of the Constitution of this State, and to regulate the Licenses mentioned in said thirteenth article." Article 13 of the Constitution of 1868, to which Act No. 38 of 1869 refers in its title, declares:
"All persons shall enjoy equal rights and privileges upon any conveyance of a public character; and all places of business, or of public resort, or for which a license is required by either State, parish, or municipal authority, shall be deemed places of a public character, and shall be opened to the accommodation and patronage of all persons, without distinction or discrimination on account of race or color."
In view of the fact that Article 13 was inserted in the Constitution of 1868 during the Reconstruction Era, it is manifest that the paramount intention of the framers of that Constitution was to prohibit racial discrimination by persons engaged in business. However, insofar as common carriers were concerned, the constitutional declaration is very broad and the qualifying phrase used therein "without distinction or discrimination on account of race or color" relates only to places of business or of public resort for which a license is required by either the state, parish or municipal authority. It is evident to me that the Legislature of 1869 regarded the constitutional provision in this light because section 1 of Act No. 38, as applied to common carriers, prohibits any carrier from refusing admittance to any person except in cases where the person refuses to pay the fare or is of infamous character.
The second section of the Act, which applies the provisions of the first section to persons operating places of public resort, is unquestionably of broader scope than Article *Page 474 
13 of the Constitution of 1868 and, therefore, since the title of the Act discloses that it was the purpose of the Legislature to enforce the provisions of Article 13 of the Constitution, the constitutionality of section 2 of the statute may be open to serious question.
Nevertheless, since Act No. 38 of 1869 states in its title that it was enacted for the purpose of enforcing the provisions of Article 13 of the Constitution of 1868 and since those constitutional provisions were omitted from the Constitution of 1879 and subsequent constitutions, it is apparent that that statute, aside from other considerations, became inoperative after the adoption of the Constitution of 1879. But what about sections 456, 457, 458 and 459 of the Revised Statutes of 1870? Were they dependent on Article 13 of the Constitution of 1868 for their validity?
The prevailing opinion expresses the view that, when the provisions of Article 13 of the Constitution of 1868 were left out of the Constitution of 1879, this omission not only rendered Act No. 38 of 1869 inoperative but that a like result was accomplished with respect to sections 456, 457, 458 and 459 of the Revised Statutes.
I respectfully disagree with this conclusion. In the first place, Act No. 38 of 1869 was specifically repealed by the Revised Statutes and therefore was nonexistent when the Constitution of 1879 was adopted (see section 3990 of Act No. 96 of 1870). Now, insofar as sections 456, 457, 458 and 459 of the Revised Statutes are concerned, these sections were not affected by the adoption of the 1879 constitution for the reason that they were not in any manner dependent upon the provisions of Article 13 of the Constitution of 1868 for their validity as they were enacted as sections of the Revised Statutes under a title totally different from the title of Act No. 38 of 1869. In fortification of this view, it is pertinent to examine the legislation providing for the enactment of the Revised Statutes of 1870.
By Act No. 31 of 1868, a joint committee, composed of three members of the House of Representatives and two members of the Senate, was authorized to revise the statutes of the state, to simplify their language, etc., and to reduce them to one connected text with a view to their adoption as the Revised Statutes of the state. In conformity with this mandate, the committee was formed and it undertook to prepare and codify the general statutes of the state in revised form. The revision thus made was thereafter presented to the Legislature of 1870 for its approval and, by Act No. 96 of that year, the statutes, as revised, were enacted into law. As heretofore stated, the provisions of Act No. 38 of 1869 were incorporated into the Revised Statutes, with minor changes, as sections 456, 457, 458 and 459 under a title reading as follows: "Relative to Civil Rights: the enjoyment of equal civil rights by all persons; the recognition of these rights in licenses; and the penalty for the violation thereof;". And, in the repealing clause of Act No. 96 of 1870, which is section 3990 of the statute, it is provided that "all laws or parts of laws contrary to or in conflict with the provisions of this act, and all laws or parts of laws on thesame subject matter * * * be and the same are hereby repealed, * * *". (Italics mine.)
Thus, it will be observed from the foregoing that, although the provisions of Act No. 38 of 1869 were incorporated into the Revised Statutes, they were made part of those statutes under a separate and distinct title, which was substantially broader in scope than the title of Act No. 38 of 1869 and wholly independent of the provisions of Article 13 of the Constitution of 1868. Hence, it follows that the omission of the provisions of Article 13 of the Constitution of 1868 from the Constitution of 1879 did not produce the effect contended for by the defendant in this case.
I am also of the opinion that the right of the Legislature to regulate the business of persons engaged in operating inns, places of amusement and the like and to provide that no person desiring to enter such places shall be excluded except for certain causes, is not open to serious question. The State of California has enacted such a statute, the constitutionality of which has been upheld by the Supreme Court of the United States as a valid exercise of the police power of the state. See Greenberg v. Western Turf Ass'n, 148 Cal. 126, 82 P. 684, 113 Am.St.Rep. 216, affirmed in 204 U.S. 359, 27 S.Ct. 384, 51 L.Ed. 520.
The view which I entertain respecting the validity of sections 456, 457, 458 and 459 of the Revised Statutes, is supported by authority of the Supreme Court of this state — for, in Malczewski v. New Orleans Ry. Light Co., supra, where a consideration of these sections was presented for determination, the court, while concluding *Page 475 
that they were not applicable to the facts of that case, stated in no uncertain language that they were in full force and effect.
The main opinion dismisses the holding of the Supreme Court in the Malczewski case with the statement that there is no mention in that decision of Article 13 of the Constitution of 1868 and, furthermore, that the sections of the Revised Statutes under consideration apply only to discrimination against individuals because of race or color. I am unwilling to assume that the Supreme Court did not give its consideration to constitutional provisions in passing judgment in the Malczewski case. Moreover, it is obvious that that court did not believe that these sections of the Revised Statutes were restricted to racial discriminations as it concluded that they were not applicable for other reasons.
The prevailing opinion, in citing with approval the case of Woollcott v. Shubert, 217 N.Y. 212, 111 N.E. 829, L.R.A.1916E, 248, Ann.Cas.1916B, 726, where it was held that the Civil Rights Statute of that state was applicable only to discrimination against persons on account of their race, color or creed, expresses the view that the New York statute is much broader in its terms than the sections of the Revised Statutes of Louisiana. I cannot agree with this reasoning as a reading of the two statutes is sufficient to disclose that they are vastly different. The New York act declares that all persons within the jurisdiction of that state shall be entitled to full and equal accommodations, advantages and privileges of inns, restaurants, hotels, theatres, etc., and all other places of public accommodation or amusement "subject only to the conditions and limitations established by law and applicable alike to all citizens". See Section 1, Laws of 1895, Chapter 1042. Section 2 of the statute provides penalties against any person who shall violate the provisions of section 1 by denying to any citizen, "except for reasons applicable alike to all citizens of every race, creed or color, and regardless of race, creed and color, the full enjoyment of any of the accommodations, advantages, facilities or privileges in said section enumerated * * *". In the Woollcott case, the Court of Appeals of New York, in following its previous decision in Grannan v. Westchester Racing Ass'n, 153 N.Y. 449, 47 N.E. 896, stated that the statute was applicable only to discriminations based upon race, color or creed because section 1 of the Act contained the proviso that the rights conferred were "subject only to the conditions and limitations established by law" and that, since it was the well-established common law of New York that a proprietor of a theatre had the right to refuse admission to anyone, the plaintiff could not succeed as he had not been refused admittance to the theatre because of his race, creed or color. To the same effect see Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835.
A comparison of the New York statute with the applicable sections of our Revised Statutes readily reveals the difference between them. Section 456 of the Revised Statutes prohibits common carriers from refusing accommodation to any person except for the specific reasons mentioned therein. The rights conferred under it and section 457 are not subject to, or made to depend on, rights which had been previously established by law in favor of the carrier or proprietor of places of public resort.
For the foregoing reasons, I respectfully dissent.