INOCENCIO RIVERA SANTOS, demandante y apelante, *v.* CARLOS R. ROSSI, demandado y apelado.

Núm. 9025.—*Sometido:* Noviembre 28, 1944. *Resuelto:* Marzo 23, 1945

*Virgilio Brunet*, abogado del apelante; *Miranda & Miranda Esteve*, abogados del apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Carlos R. Rossi demandó en cobro de dinero a Juan Rivera Santos. Deseando asegurar la efectividad de la sentencia y habiendo observado que el demandado frecuentemente guiaba un automóvil marca Studebaker, decidió cerciorarse antes de embargar si en efecto el automóvil pertenecía al demandado. A ese fin preguntó a Francisco Aguirre, representante de los automóviles Studebaker, a quién pertenecía el vehículo que había visto guiado por Juan Rivera Santos. Luego de consultar sus archivos, Aguirre le informó que pertenecía a María Amelia Espada, manifestándole además equivocadamente que esa persona era la esposa del demandado. Con esta información Rossi se dispuso a embargar el automóvil y habiendo obtenido la correspondiente orden, el sábado 18 de octubre de 1941, como a las doce del día, mientras Inocencio Rivera Santos, acompañado de su esposa María Amelia Espada, conducía el automóvil por la calle José C. Barbosa, de esta ciudad, el márshal le ordenó que detuviese la marcha del vehículo y lo abordó acompañado de un chófer que Rossi había puesto a su disposición para que una vez trabado el embargo condujese el automóvil al sitio donde debía ser depositado. Al informar el márshal su propósito a Inocencio Rivera Santos, protestó éste, surgiendo una discusión entre ambos que duró alrededor de quince minutos, al cabo de los cuales Inocencio Rivera

Santos suplicó al márshal le permitiera llegar en el automóvil hasta la oficina de su abogado en Hato Rey, a lo cual accedió el márshal. Aconsejado allí por su abogado, entregó el automóvil al márshal, quien condujo a Rivera Santos y a su esposa a la residencia de éstos, trayéndose el automóvil y depositándolo en el Garage Casino en San Juan sujeto al embargo. Aquella misma tarde Inocencio Rivera Santos vino donde Aguirre a manifestarle lo ocurrido, y éste a petición de aquél a las dos y media de la tarde le prestó un automóvil Studebaker para que lo usara libre de gastos mientras se arreglaba el asunto.[1]

Al advertir Aguirre que había inducido a error a Rossi, lo llamó, y aclarado el asunto, el lunes 20 de octubre por la tarde la esposa de Inocencio Rivera Santos recibió el automóvil, siendo devuelto a Aguirre el que éste le había prestado a Rivera Santos.

El 17 de diciembre de 1941 Inocencio Rivera Santos instituyó este pleito contra Rossi en reclamación de $8,200 que alegó era el montante de los daños que había sufrido con motivo del embargo. Distribuyó esa cantidad en las siguientes partidas:

"(a) Por las torturas y angustias mentales y humillación
 sufridas, $5,000,
"(b) Por los perjuicios a su reputación, 3,000,
"(c) Por la privación del uso, goce y disfrute de su automóvil, 200."

Visto el caso en sus méritos, la corte desestimó las partidas (b) y (c), y en cuanto a la marcada con la letra (a) la redujo a cien dólares, y por esta suma y las costas dictó sentencia a favor del demandante. El demandado no apeló de la sentencia, estableciendo el demandante el presente recurso.

---

[1] Según declaró Inocencio Rivera Santos, el automóvil le fué prestado por Aguirre al día siguiente, y tuvo que alquilar uno durante la tarde del sábado, pero la corte dió crédito a Aguirre y declaró probado que Rivera Santos sólo estuvo privado de automóvil durante dos horas y media.

 Arguye el apelante que la corte erró al declarar que él no había presentado prueba tendente a demostrar los daños que alegó haber sufrido por la privación del uso del automóvil, y que debió compensarle por los dos días y medio que estuvo privado de su automóvil. Ciertamente el apelante y su esposa declararon que el día 18 de octubre, como a la una y media de la tarde, el demandante alquiló un automóvil para usarlo aquella tarde, y que en efecto lo usó, teniendo que pagar ocho dólares por el alquiler. Pero hemos visto que esa evidencia fué contradicha por el testigo Aguirre, resolviendo la corte el conflicto de la prueba a favor del apelado,[2] sin que se haya demostrado que al así hacerlo incurriese en manifiesto error o actuase movida por pasión, prejuicio o parcialidad.

Como el embargo fué trabado a las 12:05 del día y el márshal condujo al apelante, primero a la oficina de su abogado en Hato Rey y luego a su residencia, al recibir a las dos y media de la tarde el automóvil que le prestó Aguirre y que lo devolvió el lunes siguiente, aceptando la conclusión de la corte al efecto de que el apelante no aquiló otro automóvil, no vemos qué daño pueda realmente haber sufrido por la privación del uso de su automóvil. La concesión de daños, como dijo la corte inferior, no es un castigo que se impone al que debe pagarlos, sino una compensación al que los ha sufrido, y por consiguiente debe éste probar su existencia para que le puedan ser concedidos. No existe el error que por este motivo señala el apelante.

 Otro error que se imputa a la corte inferior es el no haber concedido daños al apelante por la pérdida de su reputación. En apoyo de su tesis el apelante arguye que su esposa declaró que al trabarse la discusión entre el márshal que quería embargar el automóvil y el apelante que lo resistía, el público se reía y mofaba de él, y que alguien del público le gritó, ''Eso te pasa por embrollón.'' Argulle

(²)Véase la nota núm. 1, pág. 720.

además que él declaró que las ventas de neveras que acostumbraba hacer como agente vendedor de la International General Electric Co. of P. R. se redujeron considerablemente; que esa reducción fué causada por el estado de ánimo en que quedó con motivo del incidente del embargo, y por haberse enterado del incidente el público de San Juan. El apelante en verdad presentó prueba al efecto de que en los meses siguientes al embargo sus ventas fueron menores que las que había realizado hasta el 18 de octubre de 1941, pero no probó que esa reducción en sus ventas fuese la consecuencia necesaria del embargo. Por el contrario, el 7 de diciembre de 1941 los Estados Unidos entraron en la actual guerra, y como consecuencia del estado de guerra bajaron las ventas, especialmente en los efectos eléctricos y de refrigeración, conforme declaró Rossi, quien por muchos años viene dedicándose a la venta de efectos eléctricos, incluyendo neveras.

■ Por último, se queja el apelante de que la corte inferior sólo le concedió la cantidad de cien dólares por la humillación, torturas y angustias mentales sufridas por él con motivo del embargo.

El demandado no apeló de la sentencia. En cuanto a él, por haberla consentido, la condena de cien dólares por las angustias mentales que alega haber sufrido el demandante no puede ser eliminada ni reducida. Pero como el demandante apeló de la sentencia y sostiene que la cuantía de los daños debe ser aumentada, precisa establecer a los efectos de su apelación si de conformidad con el art. 1802 del Código Civil, que en esta jurisdicción rige la materia de daños por culpa y negligencia, procede concederlos por humillación y sufrimientos mentales, cuando éstos no vienen acompañados de daños físicos, como sucede en el presente caso.

El derecho a reclamar daños y perjuicios por humillación y sufrimientos mentales independientemente de la existencia de daños físicos ha sido ya reconocido en esta jurisdicción.

*Mejías* v. *López,* 51 D.P.R. 21, y *Vélez* v. *General Motors etc. Corporation,* 59 D.P.R. 584. Pero en ninguno de estos casos se discutió ampliamente la cuestión, y habiendo surgido dudas al efecto de si debe seguirse esa doctrina o limitarse a aquellos casos en que los daños morales surgen como consecuencia de daños físicos, hemos creído conveniente hacer un estudio más amplio de la doctrina a fin de que si subsiste en esta jurisdicción, descanse sobre más sólidas bases.

El artículo 1802 usa un lenguaje muy amplio al tratar sobre la materia de daños y perjuicios.[3] Dice así:

"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado."

Bajo este artículo, tomando como punto de partida un *dictum* en el caso de *Zalduondo* v. *Sánchez,* 15 D.P.R. 231, 236, resuelto en 1909, y continuando en una larga serie de casos, entre otros los de *Díaz* v. *The San Juan Lt. & T. Co.,* 17 D.P.R. 69, *Maldonado* v. *The Puerto Rico Drug Co.,* 31 D.P.R. 747, *Orta* v. *P. R. Railway, Lt. & P. Co.,* 36 D.P.R. 743, *Jorge* v. *Umpierre,* 49 D.P.R. 78, *Castro* v. *González,* 58 D.P.R. 368, *Reyes* v. *Aponte,* 60 D.P.R. 890, y *Díaz* v. *Cancel,* 61 D.P.R. 888, 897,[4] este Tribunal ha venido conce-

---

[3] Los profesores de la Universidad de Barcelona, Blas Pérez González y José Alguer, refiriéndose al art. 1902 del Código Civil español, igual al 1802 del nuestro, han dicho que el principio general de dicho artículo no es sino la consagración general del famoso principio de derecho *alterum non laedere,* porque al sancionar el daño con la consecuencia de la obligación de indemnizar, está proclamando implícitamente el artículo que no se debe dañar a otro. Ennecerus-Kipp-Wolff, Tratado de Derecho Civil, traducido del alemán por los mencionados profesores, con estudios de comparación y adaptación a la legislación y jurisprudencia españolas, tomo 2, pág. 630.

[4] En el caso de *López* v. *American Railroad Co. of P. R.,* 50 D.P.R. 1, 31, se dijo por este Tribunal:

"No hay duda de que la angustia mental puede ser tenida en cuenta como elemento de daño cuando es una consecuencia directa y necesaria de la lesión física. [Cita.] Algunos tribunales sostienen que es difícil, si no imposible establecer una línea divisoria, entre sufrimientos físicos y sufrimientos mentales. . . . En este caso no es necesario que esta corte fije la regla a seguir, porque la corte inferior ha concedido $300 de indemnización que no son excesivos de acuerdo con la prueba practicada aun cuando queden descartados los sufrimientos mentales."

diendo daños morales en casos en que han sido reclamados conjuntamente con daños físicos.

El artículo 1802, fuente de la acción de daños y perjuicios por culpa o negligencia en esta jurisdicción, *Méndez* v. *Serracante*, 53 D.P.R. 849, 852, no establece diferencia alguna entre daños físicos y daños morales. Se infiere de sus términos, y así lo sostienen la jurisprudencia y los tratadistas, que para ser compensable, el daño debe ser la consecuencia natural de la culpa o negligencia de la persona de quien se reclame o de aquéllas por quienes ésta deba responder. Código Civil, art. 1803. En los casos en que hemos compensado el sufrimiento mental en los cuales han concurrido daños físicos, el daño moral ha sido una consecuencia natural del daño físico, y siendo éste último a su vez la consecuencia natural de la culpa o negligencia del demandado o de las personas por quienes él deba responder, la compensación por los sufrimientos y angustias mentales en esos casos no es otra cosa que la lógica aplicación del principio general de derecho incorporado en el art. 1802. Pero, ¿es acaso necesario que los sufrimientos y angustias mentales estén subordinados a la existencia de un daño físico? Si el daño moral realmente ha existido y es la consecuencia natural del acto culposo o negligente del demandado, o como se dice en la ley común, la culpa o negligencia del demandado es la causa próxima del daño, ¿qué razón lógica, qué principio de justicia puede oponerse para negar su compensación? ¿Acaso una humillación como la sufrida por el demandante en este caso no es más importante que muchos daños físicos por lòs cuales corrientemente y sin dificultad alguna se concede

Sin duda estas manifestaciones fueron hechas inadvertidamente, pues se trataba de un caso en que se reclamaban daños físicos y también daños morales. La regla a seguir no tenía que ser fijada porque independientemente de los *obiter dicta* de los casos de *Zalduondo* v. *Sánchez*, supra y *Díaz* v. *The San Juan Lt. & T. Co.*, supra, este Tribunal ya la había fijado definitivamente en el caso de *Maldonado* v. *The Porto Rico Drug Co.*, supra, ratificado en *Orta* v. *P. R. Railway, Lt. & Power Co.*, supra, y *Jorge* v. *Umpierre*, supra, pág. 100.

compensación? Y si el artículo 1802 no distingue entre el daño moral y el daño físico a los efectos de la indemnización, ¿por qué hemos nosotros de establecer distinciones?

Refiriéndose a las circunstancias que deben concurrir para que el daño sea compensable, dice Manresa:

"En cuanto a la determinación del daño, es preciso que éste sea cierto y que no provenga del cumplimiento de las obligaciones, o de actos u omisiones del mismo perjudicado;[5] y respecto a la demostración de la existencia de la culpa o de la negligencia, no bastan para su apreciación meras indicaciones o presunciones inadmisibles para la debida constancia de ellas, sino que deben ser comprobadas de tal modo que no quepa lugar a duda sobre las mismas y sobre su correlación con el daño causado, pues para que puedan constituir fuentes de obligación es preciso que medie entre ellas y el mal producido la relación de causa a efecto." Comentarios al Código Civil Español (cuarta edición, 1931), tomo XII, pág. 545.

Bajo la ley común, por regla general, cuando los daños morales no van acompañados de daños físicos, no se concede compensación. La teoría parece ser que el "impacto" físico ofrece la garantía deseada de que el daño moral sea genuino.[5a] Los defensores de esta doctrina la justifican (1) en razones de orden público, es decir, que el orden público la requiere a manera de dogma legal porque de lo contrario se abriría la puerta a una multitud de litigios en casos en que el daño moral podría ser simulado o en que descansase en mera conjetura y especulación, y (2) en que la compensación no puede estimarse en dinero.

A estos argumentos podríamos replicar que las cortes no deben negar reparación por daños realmente sufridos simplemente para evitar que haya un aumento de pleitos. Tam-

---

(5) Compárese el requisito de que el daño no provenga de actos u omisiones del mismo perjudicado, con la doctrina de negligencia contribuyente que hemos adoptado de la ley común, al efecto de que si la negligencia del demandante es en todo o en parte la causa próxima del daño, el demandante no tiene derecho a indemnización.

(5a.) Esta doctrina surgió como consecuencia de una mala interpretación del *dictum* de Lord Wensleydale en el caso de *Lynch* v. *Knight*, 9 H. L. Cas. 577, 598 (1861). Sedgwick *on Damages* (novena edición, 1920), vol. 1, pág. 51.

poco deben negar un remedio a quien en justicia lo merece sencillamente porque pueda presentarse un número de reclamaciones fraudulentas. Las reclamaciones fraudulentas se dan en todas las ramas del derecho y es el deber de las cortes distinguir las reclamaciones legítimas de las falsas. La cuestión se reduciría a un problema de evidencia. Si la existencia del acto torticero, que se alega produjo el daño moral, se prueba satisfactoriamente y es de tal naturaleza que razonablemente debió causar el daño moral, queda excluída de ese modo la posibilidad del fraude y la simulación, y no hay motivo para negar la reparación. Concedemos que los daños morales como los del presente caso no son susceptibles de una exacta compensación, pero la misma razón podría aducirse cuando se reclaman daños físicos y a la vez daños morales. 21 Corn. L. Q. 169; Sedgwick *on Damages* (novena edición, 1920), vol. 1, pág. 72, sec. 46; Herbert F. Goodrich, *Emotional Disturbance as Legal Damage,* 20 Mich. L. Rev. 497, 512–513.

Como toda teoría legal que en la práctica no responde a su propósito de hacer cumplida justicia, la doctrina del "impacto" ha tenido que relajarse a tal extremo que las cortes han declarado la existencia del impacto en contactos tan insignificantes con la persona perjudicada, que en realidad el impacto no ha jugado parte alguna como causa del daño. A este efecto, Proseer cita como ejemplos de impactos insignificantes un pequeño golpe, una ligera sacudida de un carruaje, la caída de polvo en un ojo, y la inhalación de humo, y menciona el caso de un circo en Georgia (*Christy Bros. Circus* v. *Turnage* (Ga. 1928), 144 S. E. 680) que redujo al absurdo la doctrina al sostener que hubo el necesario impacto al evacuar el caballo del demandado en la falda de la demandante. Proseer *on Torts,* págs. 214, 215.

Una pequeña mayoría de las cortes que va ganando terreno ha repudiado el requerimiento del impacto y considerado las consecuencias físicas del mismo o las circunstan-

cias del accidente como suficiente garantía de que el daño moral es genuino. Obra citada, pág. 215. El mismo autor (págs. 215–216) dice:

"Necesariamente debe haber algún requisito de prueba satisfactoria, y por lo menos en ausencia de conocimiento de que el demandante sea de una susceptibilidad extraordinaria, no debe concederse compensación por daños morales cuando ningún individuo normal hubiera sido afectado bajo las circunstancias. Pero en términos generales parece claro que las cortes que niegan todo remedio en tales casos están peleando una acción de retaguardia."

Al mismo efecto, dice el Juez Magruder al final de su artículo, *Mental and Emotional Disturbance in the Law of Torts,* 49 Harv. L. Rev. 1033, 1067:

"Resumiendo, es de justicia decir que las cortes ya han dado extensa protección a los sentimientos y emociones. Han demostrado una notable adaptabilidad a la técnica de dar reparación a las más serias perturbaciones de este importante interés de la personalidad. Ya no es ni siquiera aproximadamente cierto que la Ley no pretende dar reparación por angustias y sufrimientos mentales 'cuando el acto ilegal causa solamente daños de esa naturaleza'. Si una constante uniformidad no puede todavía claramente advertirse en los casos resueltos, esto sólo indica que la ley sobre esta materia está en un proceso de desarrollo."

Apartándose de la doctrina del impacto, este Tribunal, en los casos de *Mejías* v. *López,* supra, y *Vélez* v. *General Motors etc. Corporation,* supra, concedió indemnización por daños morales sin que hubiese existido impacto físico. En el primero de ellos la demandada había vendido un radio a la demandante bajo contrato de venta condicional. La compradora llegó a satisfacer ciertos plazos, pero dejó de pagar los restantes. Un agente de la vendedora penetró en la casa de la demandante, y sin que existiera procedimiento judicial alguno, contra la voluntad de la demandante y en presencia de varios vecinos y de otras personas que se reunieron en el sitio, se apoderó del radio para entregarlo a la demandada. La demandante reclamó daños por los sufrimientos y angus-

tias mentales que le fueron causados por· el acto ilegal del agente de la demandada al apoderarse del radio en las circunstancias en que lo hizo. Revocando este Tribunal la sentencia que declaró sin lugar la demanda a base de una excepción previa, en lo pertinente dijo (págs. 26, 27):

"El fundamento de la acción ejercitada consiste en el acto culpable que se atribuye a la parte demandada al penetrar a la fuerza en el hogar de la demandante y realizar allí los actos que se le imputan que causaron a la demandante la inquietud, angustia moral y postración nerviosa valuadas por ella en tres mil dólares.

"* * * * * * .*

"El que por acción u omisión causa daño a otro interviniendo culpa o negligencia, está obligado a reparar el daño causado, ordena el artículo 1802 del Código Civil, ed. 1930, siendo exigible esa obligación, según el artículo siguiente, 1803, del propio cuerpo legal, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder."

En el de *Vélez* v. *General Motors etc. Corporation,* supra, el demandante y su esposa compraron a la demandada Arecibo Motors un automóvil mediante contrato de venta condicional que posteriormente fué cedido a la otra demandada General Motors Acceptance Corporation. Estando vencidos y sin pagar dos plazos del precio de venta, la demandada General Motors Acceptance Corporation, sin mediar orden judicial y contra la voluntad del demandante, se incautó del automóvil y lo depositó con la Arecibo Motors. Posteriormente ésta demandó al demandante y a su esposa en cobro del precio de venta, y embargó, juntamente con el automóvil vendido, otros bienes inmuebles que no pertenecían a los demandantes. Los dueños del automóvil reclamaron varias partidas de daños y perjuicios, entre ellas una ascendente a mil dólares por la humillación sufrida por ellos con motivo de la incautación ilegal del automóvil. A base de una excepción previa, la corte de distrito desestimó la demanda, rechazando por improcedentes algunas de las partidas de daños materiales, quedando reducida a la cantidad de $355

la reclamación de tales daños, y en cuanto a la partida por sufrimientos mentales, también la rechazó por entender que no era recobrable. Como la cuantía reclamable, según la corte de distrito, quedó reducida a la cantidad de $355, declaró con lugar la excepción previa por no alcanzar dicha cuantía a la necesaria para conferirle jurisdicción. Al revocar la sentencia, luego de convenir con la corte inferior en que los daños materiales alegados no procedían, dijo este Tribunal (pág. 589):

"En lo que no estamos conformes con la corte sentenciadora es en que 'no están sujetos a compensación . . . los sufrimientos morales que ocasionara el acto torticero que se le imputa a la General Motors Acceptance Corporation.' Y esta falta de conformidad nos lleva a la conclusión de que la corte erró al no dar al demandante oportunidad para enmendar su demanda, ya que sin necesidad de alterar el valor de los daños fijados por él mismo, podría enmendar su alegación de modo tal que presentara un caso propio para ser resuelto originalmente por la corte de distrito.

"Si se observa la forma en que está redactada la última partida de mil dólares, se verá que cubre todos los hechos alegados, y por tanto el de la incautación del automóvil sin el debido procedimiento de ley.

"Siendo ello así, aunque el pleito se reduzca como debe reducirse al alegado acto torticero de la incautación del automóvil, sin alterar la teoría de la demanda, puede ésta enmendarse limitando la reclamación de daños por sufrimientos morales a los que ocasionara, si es que algunos ocasionó, el indicado acto.

"En cuanto a que la reclamación por daños y perjuicios por sufrimientos morales cabe en casos de esta naturaleza cuando concurren las circunstancias básicas necesarias para ello, quedó decidido por esta propia corte en el caso de *Mejías* v. *López*, 51 D.P.R. 21, 26. . ."

El principio legal incorporado en el art. 1802 de nuestro Código Civil es el mismo que en el de Luisiana aparece bajo el número 2315, el cual en lo pertinente dice:

"Cualquier acto del hombre que cause daño a otro, obliga a aquél por cuya culpa se causó, a repararlo."

Bajo este artículo, se conceden en Luisiana daños por la humillación y mortificación causadas con motivo de embar-

gos ilegalmente trabados. En el caso de *M. L. Byrne & Co.* v. *L. H. Gardner & Co.* (1881), 33 La. Ann. 6, se concedieron daños sustanciales por la humillación y vejamen que sufrió la demandante al verse compelida a soportar por espacio de dos semanas la presencia en su establecimiento de un representante del *sheriff* para vigilar las operaciones comerciales que se hacían. Sostienen el mismo principio *General Motors Acceptance Corporation* v. *Sneed* (La. 1928), 119 So. 417; *General Motors Acceptance Corporation* v. *Sneed* (La. 1929), 121 So. 254, 256, y *Williams* v. *Hill, Harris & Co.* (La. 1939), 190 So. 157. En este último caso se dijo a la pág. 160:

"Cuando el acreedor que ha embargado actúa sin malicia y con causa probable, solamente pueden recobrarse los daños realmente sufridos. Estos comprenden no sólo la pérdida pecuniaria y gastos incurridos, tales como honorarios de abogado y costas, si que también la mortificación, molestia y vejamen causados al demandado en el procedimiento de embargo. *M. L. Byrne & Co.* v. *L. H. Gardner & Co.*, 33 La. Ann. 6."

Por último, en el caso de *Malczewski* v. *New Orleans Ry. & Light Co.* (La. 1924), 101 So. 213, 35 A.L.R. 553, se concedieron daños por la humillación que sufrió la demandante por el lenguaje grosero y equívoco que usó el agente de la demandada al no permitirle estacionar su automóvil en un sitio (*parking place*) que la demandada dedicaba a ese efecto.

Luisiana no es la única jurisdicción donde bajo un precepto legal sustancialmente igual al nuestro se conceden daños por sufrimientos mentales independientemente de que existan daños físicos. En Francia, por ejemplo, se conceden. A ese efecto se dice en el Tratado Práctico de Derecho Civil Francés por Planiol-Ripert (traducción al español de Mario Díaz Cruz), tomo 6, pág. 763, sec. 550:

"Los Tribunales han concedido el abono de daños y perjuicios en razón de daños pecuniarios y morales *o solamente morales,* en los siguientes casos:

"* * * * * * *

"(b) a los padres cuyo hijo menor fué retenido por un tercero que se negó a devolverlo;

"(c) a los padres de alumnos a quienes el profesor explicó materias obscenas o antirreligiosas;

"(d) a la persona que recibió una carta injuriosa, si bien sin publicidad;

"(e) a la que, en contra de su voluntad, se hizo objeto de una suscripción pública;

"(f) a la familia de una persona fallecida, por habérsele practicado la autopsia en el hospital sin asentimiento de aquélla;

"* * * * * * *

"Y ello no quiere decir que los Tribunales acceden al abono de daños y perjuicios en razón de cualquier perjuicio moral sufrido; precisamente en materia de perjuicios morales es donde hallamos gran número de sentencias absolutorias por considerar muy pequeño el daño. Pero, siempre que un derecho ha sido violado injustamente, aun cuando no exista otro perjuicio que las molestias o las inquietudes que resultan de esa violación, la víctima tiene el derecho de obtener la afirmación del mismo y la sentencia condenatoria, aun cuando sólo sea por las costas del juicio a título de daños y perjuicios; y aún, ya que las costas no comprenden todos los gastos irrogados, una suma que cubra la totalidad de éstos." (Bastardillas nuestras.)[6]

En Argentina la Corte Suprema Federal y la mayoría de las cortes, basándose en el art. 1078 del Código Civil,[7] limitan la concesión del daño moral a algunos casos de actos

---

[6] Es cierto que en Francia las indemnizaciones que se conceden por daños morales por lo general son pequeñas. Esa circunstancia, sin embargo, no afecta al derecho sustantivo. La cuantía de la indemnización que fijan los tribunales depende por regla general de la costumbre del país, la cual evoluciona al venir en contacto con otras costumbres más prácticas predominantes en otros países civilizados. En Puerto Rico, por ejemplo, las indemnizaciones por daños y perjuicios derivados de culpa o negligencia concedidas en las dos o tres primeras décadas del presente siglo resultan hasta cierto punto injustas por insuficientes cuando se comparan con las que se han venido concediendo durante los últimos veinte años. El cambio se debe a la influencia de nuestras relaciones sociales y comerciales con los Estados Unidos y a la que sus instituciones políticas y jurídicas ejercen en este país.

[7] El art. 1078 del Código Civil argentino dice:

"Si el hecho fuese un delito del derecho criminal, la obligación que de él nace no sólo comprende la indemnización de pérdidas e intereses, sino también del agravio moral que el delito hubiese hecho sufrir a la persona, molestándole en su seguridad personal, o en el goce de sus bienes, o hiriendo sus afecciones legítimas."

torticeros cuando el acto torticero es criminal. De otro lado, la mayor parte de los tratadistas de aquel país asumen una posición más liberal, y basándose en la disposición del Código que trata en general de la responsabilidad por actos torticeros, art. 1109,[8] opinan que bajo este artículo debe concederse reparación por el daño causado a cualquier interés humano, sin limitarlo a aquellos casos en que exista interés pecuniario solamente. Esta última posición lentamente ha ido ganando terreno, y ha influído en la redacción de proyectos para un nuevo Código Civil. Véase 43 Col. L. Rev. 219 *et seq.* Si en Argentina no existiere el art. 1078, probablemente sus tribunales no hubieran limitado la reparación del daño moral a casos en que éste es consecuencia de un delito.

Por último, en España, aplicando el art. 1902 se han concedido daños morales, pero hasta la fecha, que sepamos, el Tribunal Supremo de la nación no ha resuelto un caso concediendo o negando daños morales que no se relacionen con el honor, sentimientos de familia, etc. Véase F. Clemente de Diego, Instituciones de Derecho Civil Español, tomo 2, págs. 311, 312. Manresa, en sus Comentarios al Código Civil Español (cuarta edición, 1931), tomo XII, a las págs. 549, 550, trata con alguna extensión esta materia, y entre otras cosas dice lo siguiente:

"¿Son resarcibles los daños morales? La opinión, que podemos llamar clásica, rechazaba el resarcimiento del daño moral, fundándose no sólo en la omisión que del mismo hizo el Código de Napoleón y los en él inspirados, sino además en la imposibilidad de hallar equivalencia entre el daño moral y la reparación pecuniaria. Pero hoy se ha abierto camino la teoría contraria, y se suele equiparar el daño moral al patrimonial, pues refluyendo el primero sobre el patrimonio del ofendido y siendo de más graves consecuencias que el segundo, resulta injusto negarle la posibilidad de la reparación. Muchos códigos modernos, como el austríaco (art. 1325), el alemán (art. 847) y el suizo (art. 54) han consagrado ya legislativamente esta doctrina

[8] El artículo 1109 del Código Civil argentino prescribe:

"Todo el que ejecuta un hecho, que por su culpa o negligencia ocasiona un daño a otro, está obligado a la reparación del perjuicio. ...."

de la reparabilidad del daño moral; y en los países en que el código no la admite o no la regula, va estableciéndola la jurisprudencia. Así ha sucedido en Italia y en nuestra misma patria.

" * * * * * * *

"Esta doctrina, altamente plausible por el sentido progresivo que la inspira y que no contraría el texto del art. 1902, dada la amplitud con que está redactado, ha sido confirmada con posterioridad por las sentencias de 14 de diciembre de 1917 y 7 de noviembre de 1919."

En verdad no vemos razón alguna para limitar la concesión de daños morales a aquellos casos en que sólo están envueltos el honor, los sentimientos de familia, etc., y no concederlos en casos como el presente, donde por las circunstancias del mismo es claro que una persona de susceptibilidad normal necesariamente tiene que sufrir angustias mentales tan fuertes o quizás más intensas que en muchos casos en que se trate de una publicación injuriosa.

No dudamos que una persona de susceptibilidad normal al embargársele ilegalmente su automóvil en la calle en las condiciones en que se trabó el embargo en el presente caso, necesariamente tuvo que sufrir angustias y humillación, especialmente si se tiene en cuenta que el embargo ilegal fué trabado mientras el demandante iba acompañado de su esposa por una de las calles más concurridas de San Juan en momentos en que más público transitaba por allí, por ser la hora en que las personas que trabajan en San Juan retornan a sus residencias.

El juez de la corte inferior concedió cien dólares por esta partida de daños, basándose en el caso de *Anisman* v. *Nagle* (La. 1933), 148 So. 885. En ese caso se solicitaban $2,100 en concepto de daños por angustias mentales, pérdida de tiempo y honorarios de abogado como consecuencia de un embargo ilegal. El embargo se había trabado por la cantidad de $750 que era adeudada a la señora Nagle por una agencia del gobierno. Parece claro que la humillación que debió sufrir la señora Nagle, contra la cual se trabó el em-

bargo, no es comparable con la que sufrió el apelante en el presente caso, pues el embargo que se trabó contra dicha señora no pudo tener la publicidad que tuvo el del apelante en el presente caso, ni concurrieron en aquél las circunstancias deprimentes que tuvieron lugar en éste.

Considerando las circunstancias concurrentes, y habida cuenta de la actitud del apelado tratando de aminorar los daños del demandante devolviéndole su automóvil tan pronto se enteró del error a que había sido inducido, somos de opinión que la partida de daños por este concepto debe ser aumentada solamente a la cantidad de trescientos dólares, que estimamos razonable. *Con esta modificación, debe confirmarse la sentencia.*