[No. 16024.  Department One.  January 8, 1921.]

# CLARENCE R. ANDERSON, *Respondent*, v. PANTAGES THEATRE COMPANY, *Appellant*.[1]

THEATERS AND SHOWS — EXCLUSION OF PERSONS BY REASON OF COLOR—LIABILITY.   Under Rem. Code, § 2686, making it a misdemeanor to deny to any person because of race, creed or color, the full privileges of any place of public resort or amusement, the proprietor of a theater cannot refuse to admit a negro to box seats and require him to take seats in the balcony; and a negro wrongfully discriminated against has his civil remedy in tort therefor.

STATUTES (93-96) — PLEADING — NECESSITY OF PLEADING GENERAL STATUTE.   Rem. Code, § 2686, making it a misdemeanor to deny to any person because of race, creed or color, the full privileges of any place of public resort or amusement, being a general and not a special statute, need not be specially pleaded in an action to enforce a civil remedy for wrongful discrimination.

TORTS (1)—ACTS. CONSTITUTING.   The gravamen of an action for wrongfully discriminating against a negro by excluding him from seats in a theater, that he had purchased, contrary to the mandate of a statute, is in tort.

DAMAGES (18, 19)—GROUNDS AND SUBJECTS OF COMPENSATORY DAMAGES—ANXIETY OR MENTAL DISTRESS—HUMILIATION.   Compensatory damages may be recovered in an action for wrongfully excluding a negro from seats in a theater, for the personal indignity inflicted and the mental suffering from the feeling of humiliation and disgrace engendered.

SAME (90)—INADEQUATE AND EXCESSIVE DAMAGES—TO REPUTATION AND FEELINGS.   A verdict for $300 for indignities inflicted in excluding a negro from seats in a theater will not be held excessive, where it occurred at a public place in the presence of a large number of people and was of an aggravated sort.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered March 20, 1920, upon findings in favor of plaintiff, in an action in tort, tried to the court.  Affirmed.

[1]Reported in 194 Pac. 813.

*Ryan & Desmond,* for appellant.

*Clarence R. Anderson* and *Robert F. Sandall,* for respondent.

FULLERTON, J.—The appellant, Pantages Theatre Company, is a corporation organized under the laws of the state of Washington, and owns and conducts a theatre in the city of Seattle. A fee is charged for the privilege of witnessing the performances conducted in the theatre, varying in amount owing to the location of the seats selected. The respondent, Anderson, is a colored man, a lawyer by profession, engaged in the practice of law in the city named. On the day of July 7, 1919, a friend of the respondent caused to be purchased three tickets of admission to box seats in the theatre of the appellant for a performance to be given therein in the evening of that day. At the appropriate time, the respondent and two other persons, also colored, presented themselves for admission to box seats in the theatre, at the same time presenting the tickets as evidence of their right of admission. The attendant at the door refused them admission, telling them that all of the seats such as were called for by their tickets were taken. The respondent, who seems to have acted as spokesman for the party, questioned the truth of the statement, whereupon another attendant was called who repeated the statement. On further insistence on the part of the respondent, he was told that he could not be admitted to that part of the theatre in any event, but that he could return his tickets for the box seats and procure tickets for seats in the balcony of the theatre. As to what subsequently followed, the evidence is conflicting, but the court found, and we think the weight of the evidence supports the finding, that the attendant became gruff and insulting in his language, saying to the respondent that

he was not admitted because he was a colored man, and that

"none of his kind of people could sit in any box seat or on the ground floor of that theatre, . . . and did rudely, using no undue force and doing the plaintiff no bodily injury, all without any provocation whatever, push, shove, jerk and force plaintiff through a crowd of people who were standing in the lobby of the theatre out upon the sidewalk in the front of said theatre."

The court further found that the respondent conducted himself in a seemly and gentlemanly manner, and that he was refused admission to the seat called for by his ticket solely because he was colored and not because no seats were then available; that it was the policy and practice of the management of the theatre to refuse admission to box seats, seats in the loges, and seats on the ground floor of the theatre to all colored people, and to all orientals, and to all persons whose dress or physical appearance might render them obnoxious to other patrons of the theatre. There is no evidence, however, that there was anything in the respondent's dress or physical appearance that would bring him within this latter class. On the contrary, it seems to be conceded that he was "immaculate, neat and dapper" in his dress and personal appearance.

In this action the respondent sought damages for the breach of duty of the appellant to admit him to the theatre; for the indignity and humiliation to which he was subjected; for injury to his standing in the community as a professional man; and for mental suffering and injury to his feelings caused by the appellant's act. The trial resulted in a judgment in respondent's favor in the sum of three hundred dollars.

The first matter to be noticed is the claim of the appellant to an absolute right to exclude the respondent from its place of business. Its contention is that

the proprietor of a theatre is a private individual, engaged in a strictly private business, which, though for the entertainment of the public, is always limited to those whom he may consent to admit to it; that there is no duty, as in the case of a common carrier, to admit every one who may apply and be willing to pay the price of a ticket, for the theatre proprietor has acquired no peculiar rights from the state, and is under no implied obligation to serve the public; that it makes no difference in this respect whether he has theretofore sold the person seeking admission an admission ticket or not, as a ticket is a mere license, revocable at the will of the proprietor, even after the ticket holder has entered the theatre and has taken the seat therein that the ticket entitled him to take.

It is probable that the contentions of the appellant correctly reflect the rules governing in such cases as administered at common law; and if, as it further contends, we have no applicable statute on the matter, it was within its rights when it refused admission to its theatre to the respondent, and subjected itself in so doing to no greater liability than the liability of refunding the purchase price of the ticket. But these questions do not require examination at length. Contrary to the contention of the appellant, we think the legislature has enacted a statute applicable to the situation as here disclosed. It has provided (Rem. Code, § 2686) that:

"Every person who shall deny to any other person because of race, creed or color, the full enjoyment of any of the accommodations, advantages, facilities or privileges of any place of public resort, accommodation, assemblage or amusement, shall be guilty of a misdemeanor."

This statute, while penal in form only, is both penal and remedial in its nature and effect. In addition to

providing for a criminal punishment of proprietors of such places for discriminating against the admission thereto of persons on account of race, creed or color, it confers rights upon the individual—it confers upon all persons, regardless of their race, creed or color, the right to be admitted to the places enumerated on equal terms with all others.

The person wrongfully discriminated against also has a civil remedy against the person guilty of the wrongful discrimination. A contrary contention was made under a similar statute in *Ferguson v. Gies,* 82 Mich. 358, 46 N. W. 718, 21 Am. St. 576, 9 L. R. A. 589. Answering the contention, the court said:

"But it is claimed by the defendant's counsel that this statute gives no right of action for civil damages; that it is a penal statute; and that the right of the plaintiff under it is confined to a criminal prosecution. The general rule, however, is that where a statute imposes upon any person a specific duty for the protection or benefit of others, if he neglects or refuses to perform such duty, he is liable for any injury or detriment caused by such neglect or refusal, if such injury or hurt is of the kind which the statute was intended to prevent; . . . ."

Mr. Justice Brewer, in the case of *In re Debs, Petitioner,* 158 U. S. 564, uses this language:

"The law is full of instances in which the same act may give rise to a civil action and a criminal prosecution. An assault with intent to kill may be punished criminally, under an indictment therefor, or will support a civil action for damages, and the same is true of all other offenses which cause injury to person or property. In such cases the jurisdiction of the civil court is invoked, not to enforce the criminal law and punish the wrongdoer, but to compensate the injured party for the damages which he or his property has suffered, and it is no defense to the civil action that the same act by the defendant exposes him also to

indictment and punishment in a court of criminal juris-
diction.''

It is true there is a difference between the act re-
cited by the learned justice by way of illustration and
the act before us, since in the one the act is an offense
at common law while in the other the offense is of
statutory creation. But we cannot conceive that this
makes a difference in the applicable rules. Each act
is a wrong against the individual, and wrongs are
equally wrongs whether in violation of rights con-
ferred by the common law or in violation of rights
conferred by statute. It will be noticed, also, that the
justice does not confine the rule to the particular in-
stance cited or instances of a similar nature, but, on
the contrary, says that the same rule is applicable to
''all other offenses which cause injury to person or
property.''

The appellant makes the further contention that the
statute cited is not applicable to the present case for
the reason that it was not pleaded. With this we can-
not agree. It is a general rule, no doubt, that a special
statute on which a plaintiff must rely in order to main-
tain his cause of action must be specially declared upon
by him, but the rule has no application to a general
statute. Statutes of the latter sort are a part of the
law of the land as much so as is the common law, and
a plaintiff relying thereon has only to plead the facts
bringing his case within the rule of the statute in order
to state a cause of action within it. The statute here
in question is a general, not a special statute, and hence
no pleading, other than a pleading showing facts within
the prohibition of the statute was necessary in order
to bring it to the judicial knowledge of the court. The
rule is stated in 36 Cyc. 1237, in the following lan-
guage:

"Where a public statute is applicable to a case, it is sufficient that the pleading of the party who seeks to rely upon the statute shall set forth the facts which bring the case within it; and it is not necessary to recite the title of the act or otherwise designate or even refer to it."

Our own case of *Seattle v. Pearson,* 15 Wash. 575, 46 Pac. 1053, is in point in principle. There we held that "it is not necessary to plead an ordinance by title, number and date of passage in a complaint filed in a court of the municipality, as it is the duty of such court to take judicial notice of the ordinance."

The rule of the case of *Flessher v. Carstens Packing Co.,* 81 Wash. 241, 142 Pac. 694, cited and relied upon by the appellant, is not contrary to the rule we here announce. It was not there held that the question at issue was not within the statute because the statute was not specially pleaded, but was so held because the issues as framed did not bring the case within the statute.

The further contention is that the damages awarded by the court are excessive. It is argued that the action is not founded on tort, but upon a breach of contract, and that for a breach of contract the measure of damages is the pecuniary loss, suffered because thereof, hence personal indignities, humiliation, sense of personal wrong, and mental suffering cannot be taken into consideration in measuring the damages suffered.

If the premise here assumed be correct—if the action has its foundation in breach of contract solely—it is possible that the deductions drawn therefrom would follow. But we cannot assent to the conclusion that the basis of the action rests in breach of contract. Since the respondent was the lawful possessor of a ticket entitling him to a choice of the unoccupied seats in a certain part of the theatre, and since the appellant

refused him admission thereto when he applied for admission, the action has in it the element of breach of contract, but this is not the gravamen of the charge. The cause of complaint is that the appellant, contrary to the right of the respondent and contrary to the positive mandate of the statute, refused the respondent admission to its place of amusement solely for the reason that he belonged to a colored race. This was a tort and an action founded thereon lies in tort. The wrong would have been the same had the respondent applied to purchase a ticket and had been refused. In other words, the respondent has a cause of action because he was denied a right which the law specially confers upon him, and which the appellant could not deny without the breach of a public duty the law enjoins upon it. The fact that the respondent had a ticket entitling him to admission does not change the cause of action from one in tort to one in contract.

But it is said that there was no personal injury inflicted upon the respondent, and hence there can be no recovery for anything other than the breach of the contract. But this is not the rule. The act alleged in itself carries with it the elements of an assault upon the person, and in such cases the personal indignity inflicted, the feeling of humiliation and disgrace engendered, and the consequent mental suffering, are elements of actual damages for which a compensatory award may be made. This we have held since the early history of the court. *Cunningham v. Seattle Elec. R. & P. Co.,* 3 Wash. 471, 28 Pac. 745; *Willson v. Northern Pac. R. Co.,* 5 Wash. 621, 32 Pac. 468, 34 Pac. 146; *Davis v. Tacoma R. & P. Co.,* 35 Wash. 203, 77 Pac. 209, 66 L. R. A. 802; *Ott v. Press Publishing Co.,* 40 Wash. 308, 82 Pac. 403; *McClure v. Campbell,* 42 Wash. 252, 84 Pac. 825; *Wright v. Beardsley,* 46 Wash. 16, 89 Pac. 172; *Nordgren v. Lawrence,* 74

Wash. 305, 133 Pac. 436; *O'Meara v. Russell,* 90 Wash. 557, 156 Pac. 550, L. R. A. 1916 E 743.

But it is said that the cases of *Corcoran v. Postal Telegraph-Cable Co.,* 80 Wash. 570, 142 Pac. 29, L. R. A. 1915 B 522, and *Kneass v. Cremation Society,* 103 Wash. 521, 175 Pac. 172, are contrary to and in effect overrule the foregoing cases. We cannot so read them. An examination of the first of the cases will disclose that the cited cases were practically all referred to therein and distinguished from the case then under consideration; the distinguishing features pointed out being that the cited cases either carried with them the element of an assault upon the person or were willful violations and physical invasions of the rights of the injured party, features not presented in the case in hand. The second case has other distinguishing elements; but it was likewise distinguished from the cited cases for the reasons stated in the case of *Corcoran v. Postal Telegraph-Cable Co., supra.*

Since we conclude that the respondent was entitled to recover for the personal indignity inflicted upon him and the consequent feeling of humiliation, disgrace, and the attendant mental suffering, it remains to inquire whether the damages assessed are too large, taking into consideration these elements of damage. The amount of the recovery is less than the recovery we permitted to stand in the somewhat similar cases of *Cunningham v. Seattle Elec. R. & P. Co.,* and *Willson v. Northern Pac. R. Co.,* before cited, and is the same in amount as was awarded by another court under precisely similar circumstances. See *Joseph v. Bidwell,* 28 La. Ann. 382, 26 Am. Rep. 102. The amount of an award in such cases is, of course, incapable of yardstick measurement; at best it is but an estimation which must depend on the circumstances of the particular case. Here the indignity was of an aggravated

sort; it occurred at a public place and in the presence of a large number of people. We think the award is not disproportionate to the proofs and should be allowed to stand.

The judgment will stand affirmed.

Holcomb, C. J., Mackintosh, Bridges, and Parker, JJ., concur.