[No. 17516.    Department Two.    November 20, 1922.]

JAMES L. FINNESEY et al., Appellants, v. SEATTLE BASEBALL CLUB, INCORPORATED, et al., Respondents.[1]

THEATERS AND SHOWS—BASEBALL PARK—CONTROL AND REGULATION —EXCLUSION OF PATRON—RIGHTS AND LIABILITIES. The exclusion from a baseball park of one who had bet on the games and given money to players is not a violation of Rem. Comp. Stat., § 2686, prohibiting discrimination against persons at places of amusement to which the public resorts, on account of race, creed or color.

SAME. The proprietors of a baseball park are engaged in a private business, subject to their control; and in the absence of statute, are not liable for the ejection of the holder of a ticket, objectionable to them because of his betting on games and giving money to players; the ticket being a mere license revokable at pleasure on refunding the money.

Appeal from judgments of the superior court for King county, Tallman and Truax, JJ., entered July 18, 1921, and February 18, 1922, denying a temporary injunction and dismissing an action in tort, upon granting a nonsuit. Affirmed.

*Robinson, Murphy & Murphine,* for appellants.

*John J. Sullivan* and *Wm. J. Steinert,* for respondents.

[1]Reported in 210 Pac. 679.

TOLMAN, J.—Appellants, as plaintiffs, sought by their first cause of action to recover damages for an alleged unlawful ejection of appellant James L. Finnesey from the Seattle Baseball Park, and by their second cause of action sought an injunction restraining respondents from interfering with Finnesey's attendance there at games to be thereafter played. At the hearing of the application for a temporary injunction, the trial court sustained a demurrer to that cause of action and denied injunctive relief. Thereafter the case came on for trial on the first cause of action before another judge, sitting without a jury, and at the close of plaintiffs' case, a judgment of nonsuit and dismissal was entered. This appeal is from both adverse decisions.

The first error complained of involves a question of law only, and since the action for damages was dismissed at the close of appellants' case, we may take the facts as shown by the evidence to be admitted for present purposes, and disregard the allegations of the complaint which go beyond the facts so shown, as to the manner of making the ejection, and the like, and the same law will apply.

It appears that appellants are husband and wife, citizens of the United States and residents of Seattle; that respondent Seattle Baseball Club, Incorporated, maintains a ball park in Seattle, known as the Rainier Ball Park, wherein the Pacific Coast League of Baseball Clubs conducted its games played in Seattle during the season of 1921; that respondents Klepper and Boldt are officers of the Seattle Baseball Club, and acted for it in the matters here involved; that admission to the ball park is by ticket, the price varying according to the seat secured, and that each ticket has plainly printed thereon "the management reserves the right to revoke the license granted by this ticket by

refunding the purchase price.'' On May 6, 1921, a
league ball game was to be played at the park, and
appellant James L. Finnesey purchased a ticket of
admission for which he paid seventy-five cents, the
usual fee, and thereupon entered the park and took
the seat in the grandstand to which the ticket entitled
him. On that occasion he conducted himself peaceably,
violating no law and no rule prescribed for governing
the conduct of patrons of the game. After the game had
started, according to Mr. Finnesey's testimony, an
usher or ground keeper went quietly to Finnesey and
advised him in a conversational tone of voice that Mr.
Klepper wished to see him at the rear of the grand-
stand. In response to this message, Finnesey at once
passed up the aisle and went to where Mr. Klepper and
Mr. Boldt awaited him at the rear of the grandstand
near the head of the stairs leading down to the entrance
gate. With them at the time were two policemen in
uniform. Mr. Finnesey describes what then occurred
as follows:

"I asked Mr. Klepper what he wanted and he said,
'Don't you know that you are barred out of the ball
park?' and I said, 'No,' and he said, 'You can't stay in
here,' and I said 'Is that true? You fixed it up once
before. I was fired out before and you fixed it up for
me and let me come back again.' So he said, 'I can't
help that.' He said, 'It is Mr. McCarthy's ruling,'
So he said, 'You will have to get out.' So I said,
'I don't think I will get out.' So then he said to the
policeman, 'Put him out,' and the policeman got a hold
of me and kind of pulled me and I pulled away from
the policeman, and so then he said, 'Put him out.'
So then he got hold of me again. The policeman then
he seemed to handle me a little roughly, so I pulled
away from him again. So finally the lieutenant he was
standing there and said to the policeman, 'Oh, throw
him out,' just like that, so the policeman grabbed hold
of me then and he pulled me all the way down the

stairs and opened the bottom door and put me out and closed the door."

It further appears from the testimony given by Finnesey on cross-examination that Mr. McCarthy referred to was the president of the Pacific Coast League, and had general supervision over its affairs; that on Mr. McCarthy's orders he, Finnesey, had been barred from the ball park in 1920 for betting on the games, giving money to players, and entertaining them at his home where liquor was served. It is admitted that these things had been indulged in to some extent by Finnesey, but not directly admitted that anything other than the betting was assigned as a reason for denying him the privileges of the park. Finnesey denies that he had done any betting at the ball park after he was first barred, and denies that he made any bets there on the day of his ejection, or that he then indulged in any improper conduct.

It seems to be the contention of appellants that the owners of the ball park, or of any other place of amusement where the public resorts, are bound by the same rules as a common carrier of passengers, such as were involved in the case of *Davis v. Tacoma Railway & Power Co.*, 35 Wash. 203, 77 Pac. 209, 66 L. R. A. 802, or that our civil rights statute, Rem. Comp. Stat., §2686, was in some way violated, as was the case in *Anderson v. Pantages Theater Co.*, 114 Wash. 24, 194 Pac. 813, though there is no allegation or proof that the ejection was because of race, creed or color. In our judgment, neither rule applies here. A proprietor of a baseball park is engaged in a private business, and though conducted for the entertainment of the public, still the owner may control it as he will, in the absence of some statute on the subject. We find the rule nowhere better stated than in 26 R. C. L., p. 710, where it is said:

"It is well settled that the owners of theaters, circuses, race tracks, private parks, and the like, being engaged in the conduct of private business, have the right to control it the same as the proprietors of any other business, subject to such obligations as may be placed upon them by statute. Unlike a carrier of passengers, for instance, with a franchise from the state, and hence under obligation to continue the business year in and year out, the proprietors of such a place can open and close the same at will and no one can make lawful complaint. Nor is there any duty as in the case of a common carrier to admit everyone who may apply and be willing to pay for a ticket, for the proprietor has acquired no peculiar rights and privileges from the state, and is therefore under no implied obligation to serve the public. The law imposes no duty upon the proprietor as to whom he shall give or refuse admission. It presumes that his own interest will assure proper treatment to those whom he may invite, by advertisement or otherwise, to his place of entertainment or amusement, but there is no rule for his guidance except his own judgment and sense of propriety. He may exclude one because he is objectionable to the patrons of his place; he may deny another admission because his dress or personal appearance is such as to detract attention from the performance or interfere with its progress in the manner he desires to have it conducted, and he may refuse another, as in the present case, because of alleged objectionable conduct on a former occasion."

This text appears to be supported by the great weight of authority. Among the many cases so holding are: *Marrone v. Washington Jockey Club,* 227 U. S. 633; *People ex rel. Burnham v. Flynn,* 189 N. Y. 180, 82 N. E. 169; *Collister v. Hayman,* 183 N. Y. 250, 76 N. E. 20, 111 Am. St. 740, 1 L. R. A. (N. S.) 1188; *Meisner v. Detroit, B. I. & W. Ferry Co.,* 154 Mich. 545, 118 N. W. 14, 129 Am. St. 493, 19 L. R. A. (N. S.) 872; *Horney v. Nixon,* 213 Penn. St. 20, 61 Atl. 1088, 110 Am. St. 520, 1 L. R. A. (N. S.) 1184; *W. W. V. Co.*

*v. Black,* 113 Va. 728, 75 S. E. 82, Ann. Cas. 1913E
558; *Boswell v. Barnum & Bailey,* 135 Tenn. 35, 185 S.
W. 692, L. R. A. 1916E 912.

In harmony with the rule just stated, and equally
well settled, is the rule that a ticket of admission is a
mere license revokable at the will of the proprietor,
even after the holder has entered the place of amuse-
ment and taken the seat described in the ticket.    26
R. C. L. 704; *People ex rel. Burnham v. Flynn* and
*W. W. V. Co. v. Black, supra.* And since the money
paid for the ticket would be the only recoverable item
of damage shown by the proof here, and since that
was refunded prior to the bringing of the action, the
disposition made of each of the causes of action was
right, and the judgment is affirmed.

PARKER, C. J., MAIN, and HOVEY, JJ., concur.