[No. 29782. *En Banc.* August 12, 1946.]

CHARLES MILLER, *Respondent,* v. EVERETT D. EDWARDS *et al.,* *Appellants.*[1]

[1]Reported in 171 P. (2d) 821.

*McMullen & Snider,* for appellants.

*Edgar P. Reid,* for respondent.

BEALS, C. J.—December 29, 1944, a few moments before midnight, the plaintiff, Charles Miller, and a lady friend left a tavern on the south side of Main street, in the city of West Kelso, and walked in a westerly direction along the south side of Main street to the intersection of that street with Fourth (or possibly Fifth) avenue. They then proceeded across Main street, toward the north, within the pedestrian crossing on the east side of the intersecting street.

At the same time, Mr. and Mrs. Everett D. Edwards, the defendants herein, together with a friend, Beatrice Hall, and three Seabees, were driving west on Main street in a car which they used for family purposes, the car proceeding along its right side of the highway. A very heavy fog prevailed, and visibility was poor. The car, driven by Mrs. Edwards, struck plaintiff while on the crossing a short distance north of the center line of Main street, seriously injuring him.

Plaintiff brought this action against defendants, Edwards, seeking to recover damages on account of injuries suffered as a result of the accident. Plaintiff alleged that defendants were negligent in the operation of the car; and defendants, in their answer, denied the allegations of negligence on their part and pleaded affirmatively contributory negligence on the part of plaintiff, which he denied in his reply.

The action was tried to the court, sitting with a jury, and resulted in a verdict in favor of plaintiff. From a judgment on the verdict, defendants have appealed.

Appellants assign error upon the ruling of the trial court overruling appellants' objections to questions propounded to appellant Helen Edwards on cross-examination; upon the giving of one instruction and the rejection of another; upon the denial by the court of appellants' motion for judgment

notwithstanding the verdict, or, in the alternative, for a new trial, and upon entry of judgment on the verdict in respondent's favor.

In his complaint, respondent alleged negligence on the part of appellants, in that Mrs. Helen Edwards, the driver of the automobile, failed to keep a proper lookout for pedestrians, including respondent, at and just prior to the time and place of the collision; that they failed to yield to respondent the right of way to which he was entitled as a pedestrian crossing Main street on a marked pedestrian lane, and that appellants failed to drive the automobile in a careful and prudent manner, consistent with the conditions existing at the time of the accident.

Appellants resided in West Kelso, and, on the evening of December 29, 1944, accompanied by Mrs. Hall, they drove to East Kelso, and, in the course of the evening, spent some time at a beer tavern, where they purchased and consumed a quart of beer. The party started home at approximately 11:45 p. m., the car being occupied by appellants, Mrs. Hall, and three Seabees who desired transportation.

The automobile was a four-door sedan, Mr. Edwards riding with Mrs. Edwards in the front seat, the other four passengers occupying the rear seat. The car was equipped with a windshield swipe, which was operating on that part of the windshield in front of the driver's seat. There was also, as Mrs. Edwards testified, "a little rubber fan that sits to the right of the steering wheel on the dash board," its purpose being to assist in keeping the windshield clear.

The car was proceeding upon its right side of the street, appellants' testimony being to the effect that it was not proceeding faster than twenty miles an hour. It is admitted that the car struck respondent while he was crossing Main street from south to north and after he had passed the center line of Main street.

Respondent had spent the evening at the Owl tavern in West Kelso, where he had danced with acquaintances and where he had drunk some beer. He testified that, as he started to cross Main street with his companion, he looked to the left and to the right and saw no cars approaching

from either direction. As the couple reached approximately the center of Main street, he stated that he again looked to his right and saw the lights of appellants' car approaching from the east, at a distance, as he estimated it, of about fifty yards. Being of the opinion that he would have plenty of time to cross the street in safety, he continued on his way. After proceeding three or four steps to the north of the center line of Main street, he again looked and saw the car at a distance of about five feet, whereupon he endeavored to assist his friend and, with her, to escape being struck by the car. The car, however, struck both of them, inflicting upon respondent the injuries of which he complains in this action.

From all the evidence, it clearly appears that, at the time of the accident, a dense, wet fog prevailed and that visibility was very poor. It was admitted that respondent had drunk some beer while at the Owl tavern, and there is some evidence that, after the accident, he showed the effects of drinking.

In his complaint, respondent did not allege that the driver of the Edwards' car was intoxicated. During the cross-examination of appellant Helen Edwards, she testified that, earlier in the evening, the party had visited a beer tavern in Kelso, whereupon respondent's counsel questioned her as follows: "And of course, you people had had some liquid refreshments at the Three Pigs?"

Appellants objected to the question on the ground that it was not proper cross-examination and was beyond the issues framed by the pleadings. The trial court overruled the objection, whereupon further cross-examination disclosed the fact that, while at the tavern, the Edwards' party had bought and consumed a quart (three and one-half glasses) of beer. There was no evidence even tending to show that Mrs. Edwards was to any extent under the influence of intoxicating liquor or that her driving of the car was in any way affected.

In support of their contention that the trial court erred in permitting this cross-examination, appellants cite the

case of *Lubliner v. Ruge,* 21 Wn. (2d) 881, 153 P. (2d) 694, in which this court used the following language:

"We, therefore, state the rule to be that, when a party to an action contemplates submitting affirmative proof that, by reason of the use of intoxicating liquor, there was thereby a contribution to some act or omission which it is alleged constituted negligence, such fact must be pleaded by such party."

The case cited was one brought for the recovery of damages for injuries sustained by a pedestrian who was struck by an automobile. From a judgment in favor of the defendants, plaintiff appealed, and, among other matters, assigned error upon the refusal of the trial court to permit plaintiff's attorney to say, in his opening statement to the jury, that he would prove that the defendant driver had been drinking liquor prior to the time of the accident. On objection by the defendant that such proof was not permissible because not pleaded, the court sustained the objection. In holding that the objection was properly sustained, we stated the rule as above set forth.

In the case cited, plaintiff, in his opening statement, alleging the grounds of negligence upon which he relied to fix liability upon the defendant, attempted to state that the plaintiff would affirmatively prove that the defendant had been drinking intoxicating liquor prior to the accident. If, as we said in the case cited, plaintiff desired to rely upon that fact as a ground of negligence, he should have pleaded it. In the case at bar, the fact that the party of three had consumed a quart of beer was brought out by respondent on cross-examination as to their activities during the time next preceding the accident.

In the case of *Girardi v. Union High School Dist. No. 1,* 200 Wash. 21, 93 P. (2d) 298, which was also an action to recover for personal injuries sustained in an automobile collision, the defendant had pleaded contributory negligence on plaintiff's part, and, on cross-examination, the defendant's counsel asked Mr. Girardi, "You had a bottle in the car, didn't you?" The trial court sustained an objection to the question. On appeal by the defendant, error was as-

signed upon that ruling. After stating the proposition as above, this court said, concerning the point urged:

"Appellant contends that the cross-examination should have been allowed in order to show that the witness had consumed intoxicating liquor. It will be observed, however, that appellants' attorney did not inquire as to whether respondent had consumed any of the liquor that had been in the bottle, and when asked by the court if he contended respondents were intoxicated or had drunk from the bottle, counsel answered in the negative. Counsel had a right to question the witness relative to drinking or being intoxicated, but he did not pursue that line of examination.

"The record discloses that, after this question was raised, respondents testified very fully with respect to the bottle of liquor, the reason for having it in the car, and that neither of them had taken a drink. After that testimony had been introduced, no questions were asked on cross-examination concerning the drinking or the matter of intoxication. The question concerning the bottle was immaterial, and the court's ruling was correct."

■ In ruling upon questions arising during the examination of witnesses, and particularly upon the cross-examination, the trial court has considerable latitude, and its rulings will not be held to constitute reversible error, unless it appears that such rulings are clearly erroneous and, generally speaking, prejudicial.

■ Appellants argue that the question was improper and the evidence prejudicial, because "the seed of suspicion and disapproval had been planted in the minds of the jurors." Appellants also argue that they were not advised by the pleadings that they would be called upon "to meet such an issue." No issue of intoxication was raised by the respondent. Within reasonable limits, it was proper to cross-examine Mr. and Mrs. Edwards as to where they had been during the evening, prior to the accident. Mrs. Edwards had testified, on cross-examination, in response to a question as to where they had passed the evening:

"A. We had been over to The Three Pigs to dance. Q. What is the Three Pigs? A. A beer tavern. Q. They close up sharply at twelve o'clock? A. They quit dancing at a quarter to twelve and close at twelve o'clock."

The foregoing evidence was admitted without objection. It is difficult to understand in what manner the further cross-examination was prejudicial to appellants. Any prejudice which might have existed in the mind of any juror against drinking beer certainly would have applied also to respondent. This assignment is based upon no reversible error.

Appellants assign error upon the court's instruction concerning the right of way enjoyed by a pedestrian crossing a street at its intersection with another street, the instruction having been given in the words of the applicable portion of Rem. Rev. Stat., Vol. 7A, § 6360-99 [P.P.C. § 295-49]. Appellants contend that the instruction should have been amplified by a statement somewhat limiting the responsibility of the driver of an automobile which struck and injured a pedestrian while the latter was on the recognized street crossing. Appellants proposed an instruction embodying their view of the law and assign error upon the refusal of the trial court to instruct the jury in accordance with their request. We shall consider these two assignments of error together.

As we have stated, a very heavy, wet fog prevailed at the time and place of the accident, greatly reducing visibility.

The right of way accorded to a pedestrian while crossing a street at a street intersection and proceeding along the recognized crossing is very definitely fixed by the statute above cited. In connection with their assignment of error upon this phase of the case, appellants rely upon several of our decisions, including the case of *Rettig v. Coca-Cola Bottling Co.*, 22 Wn. (2d) 572, 156 P. (2d) 914, in which the plaintiff appealed from a judgment entered upon the verdict of a jury in favor of the defendants. In that case, a small boy, accompanied by his mother and his young sister, alighted from a passenger bus and, disobeying his mother's command, ran around the front of the bus and pursued a diagonal course across the street directly in front of defendant's truck which was traveling in the same direction as the bus. This court affirmed the judgment, holding that, under the circumstances shown, it should not be held as

matter of law that the defendant's truck driver was guilty of statutory negligence. The case is nowise controlling here, as in the case at bar it clearly appears that respondent was proceeding directly across the street at the recognized crosswalk.

Appellants cite several other cases in which we held that a pedestrian who walked into the side of a moving automobile which was in plain sight, or a pedestrian who suddenly entered the roadway from behind a parked automobile and was injured by a passing car, were guilty of contributory negligence as matter of law. These cases are not here in point.

■ The basis of liability for injuries to the person or property of another is negligence. *Wellons v. Wiley,* 24 Wn. (2d) 543, 166 P. (2d) 852. Acts may be held negligent as matter of law, or they may be found to be such as matter of fact.

■ It is true, as contended by appellants, that the statutory laws of the road must be given a reasonable construction. These statutory rules necessarily vary greatly in their scope and operation. A violation of a rule may be excusable if it was not the result of negligence on the part of the driver of an automobile. *Bissell v. Seattle Vancouver Motor Freight, ante* p. 68, 168 P. (2d) 390.

In the case at bar, the trial court properly instructed the jury that the basis of the action was negligence, and that respondent was required to prove by a preponderance of the evidence that the defendants were negligent as charged in the complaint, and that defendants' negligence was the proximate cause of respondent's injuries. The court also properly defined the word *negligence.* The jury was also properly instructed concerning appellants' allegations that respondent had been guilty of such contributory negligence as would prevent his recovery of damages against them.

Instruction No. 10 given by the court reads as follows:

"Under the law, a pedestrian crossing at an intersection within the marked pedestrian lane, has the right of way over vehicular traffic, and the plaintiff had the right of way

if crossing on such crosswalk, and he had the right to assume that the defendants would operate the car driven by them with due care and would not violate such rule, and the plaintiff had the right to govern his actions according to this assumption until it appeared, or in the exercise of due care on his part, should have appeared to the plaintiff that the driver was not so proceeding."

Appellants took no exception to this instruction.

■ The existence of a heavy fog does not lessen the right of way enjoyed by a pedestrian in crossing a street in the proper manner at an intersection. Frequently pedestrians are obliged to cross streets during foggy weather. While this places an added burden to use great care on drivers of automobiles and upon pedestrians, a pedestrian while proceeding in a proper manner still enjoys the statutory right of way.

Appellants contend that, by the instruction to which they excepted, the court "told the jury that under no circumstances would a car operator be excused from yielding the right of way to a pedestrian in a marked crosswalk." The trial court's instructions to the jury were based upon the evidence introduced in the case, and our approval of the instruction is of course limited to the facts disclosed by the record in the case at bar.

■ A pedestrian must use the right of way accorded him by statute at a recognized street crossing, with due care for his own safety. By his negligence, a pedestrian may subject himself to a ruling that he was guilty of contributory negligence as matter of law, or he may by his conduct justify a finding by the trier of the fact that he was guilty of contributory negligence as matter of fact. Those are questions which must be determined in each individual case as it arises.

■ The trial court did not err in giving the instruction of which appellants complain, nor in refusing the instruction which appellants requested.

Finally, appellants assign error upon the denial of their motion for judgment in their favor notwithstanding the ver-

dict, or, in the alternative, for a new trial, and upon the entry of judgment against them.

Appellants vigorously contend that the trial court should have held that respondent, as matter of law, was guilty of contributory negligence and should have dismissed the action.

The evidence shows beyond question that, at the time of the accident, a dense, wet fog prevailed, greatly limiting visibility. This condition placed an added burden to use great care both upon the drivers of automobiles and upon pedestrians crossing a street.

Respondent testified that, when he reached the middle of Main street, he looked to his right and saw the lights of appellant's approaching car, but that he believed that he had sufficient time to reach the sidewalk toward which he was walking without danger from the approaching automobile. He testified that, just before he was struck by the automobile, it seemed to be traveling "pretty fast." It is admitted that appellants' car was traveling on its right side of the street.

Appellant Helen Edwards testified on direct examination as follows:

"Q. About how fast, in your estimation were you traveling as you went west on Main street? A. I was not going over twenty miles an hour. Q. Were there other cars along there at the time you passed along in the neighborhood of Fourth and Fifth streets? A. No, sir. Q. What was the first knowledge you had of the presence of Mr. Miller and his woman companion? A. I saw them in front of the car. Q. Where were you at the time? A. I was almost at the intersection of Fifth. Q. How far away from the front of your car do you think they were? A. They were quite close. I didn't know just exactly, but they looked quite close to me. Q. Do you know in which direction they happened to be traveling or facing? A. They were going to the north side of the street. Q. What did you do after you saw them? A. I applied my brakes and stopped. Q. Do you know how far your car traveled, or approximately how far your car traveled after you first saw them? A. About the length of the car. Q. You heard Mr. Crandall testify this morning as to where the car stood with the back end just over the marks

of the cross walks. Is that about right? A. I didn't get out of the car, but from what I could see from the front seat, the car was about the middle of the intersection. Q. That is, the front of the car almost reached the middle of Fifth street? A. Yes. Q. Fifth street is wider or narrower than Main street? A. They are all the same, I believe. Q. As you approached that intersection, and at the time you first saw them, just what were you doing? A. I was driving the car and watching the road."

On cross-examination of Mrs. Edwards, the following occurred: After Mrs. Edwards had testified that there was a rain swipe on the windshield which functioned only on that portion of the windshield in front of the driver's seat, she testified as follows:

"Q. You say you couldn't see Mr. Miller and his companion until they were right directly in front of your car? A. That's right. Q. When you say directly in front of your car, how far in front of your car were they? A. I don't know exactly. But they ran in front and couldn't be very far from the bumper when I saw them. Q. Were they ten feet away, just for an estimate? A. No, not ten feet. Q. Were they five feet? A. I really don't know. Q. But very close? A. They were close. Q. Your car then proceeded on and struck both of them and they were knocked down. That is right, isn't it? A. I guess they were knocked down. I didn't get out. Q. After that your car came to rest just a few feet past their bodies? A. As I was told, one was lying to the right and one to the left, directly behind the car. Q. How far could you see through your windshield that evening as you drove along? How many feet could you see an object? A. I couldn't see very far. Q. Could you estimate it in feet? A. I am not very good in feet. Q. Or yards? A. I couldn't see over half a block. Q. Could you see a good quarter of a block, anyhow, to be fair with you? A. Something on that order. Q. Between a quarter and a half a block, you would say? A. Yes. Q. And you didn't see these people until you were practically on them immediately in front of your car? A. No."

On redirect examination, Mrs. Edwards testified as follows:

"Q. Do you think you could see a person in dark clothing in that fog and mist for half a block? A. Not a pedestrian, no. Q. Do you think you could see them without light .

clothing to attract your attention for half a block? A. I could see a car coming, but not a pedestrian. Q. As a matter of fact, you didn't see them at all until they were right in front of you? A. That's right. I didn't see either one until they were directly in front of me."

Appellant Everett D. Edwards testified that he was sitting beside Mrs. Edwards on the front seat of the car, but that, there being no windshield swipe on that side, he could not see through the windshield. On cross-examination, the witness said, "To be honest, I couldn't see a thing on my side, not out of my side."

Two of the persons who were riding in the rear seat testified at the trial, but saw nothing of the accident.

Mrs. Edwards testified that she was proceeding at not over twenty miles an hour; that she could observe the street ahead of her from a quarter to half a block, but that she could not see respondent and his companion until they were in front of her car.

If existing weather conditions so greatly restricted Mrs. Edward's vision, she should have exercised a very high degree of care to compensate for that fact. The evidence clearly indicates that Main street was a well-traveled highway.

The driver of an automobile should always be aware of the fact that pedestrians may be crossing a street at intersections, and that pedestrians so crossing the street are entitled to the right of way.

The jurors were entitled to believe that Mrs. Edwards was driving at twenty miles an hour under the conditions shown by the testimony.

Respondent testified that he saw the lights of the car, but thought he had plenty of time to safely proceed in front of the car.

In support of their argument upon this phase of the case, appellants cite several of our decisions, including *Hooper v. Corliss*, 146 Wash. 50, 261 Pac. 645; and *Hagstrom v. Limbeck*, 15 Wn. (2d) 399, 130 P. (2d) 895.

In the *Hooper* case, the judgment in favor of the plaintiff

was reversed because of error in an instruction which this court stated withheld

". . . from the jury the very points which appellants relied upon, namely, that respondent, by stepping out from between parked automobiles, by attempting to cross between intersections and by heedlessly dashing into the street in the face of oncoming traffic, if the jury should so find, as to any one, performed a positive act such as a reasonably prudent person would not have done under like circumstances."

In the case at bar, it is admitted respondent was crossing the street at a proper point. It is not contended that the jury was not properly instructed that, if the jury found respondent was guilty of contributory negligence, the verdict should be for appellants.

In the *Hagstrom* case, which was an appeal by plaintiff from a judgment entered on the verdict of a jury in favor of the defendants, this court found no reason for the reversal of the judgment, the evidence amply justifying the verdict upon the ground of plaintiff's contributory negligence.

In the case at bar, the jury was clearly justified in finding that appellant Helen Edwards was negligent in driving the automobile as she did.

On the question of respondent's contributory negligence, the disputed question of fact was submitted to the jury, that question being clearly within their province to determine. The jury decided that question in favor of respondent, and the record does not support appellants' contention that the trial court erred in denying their motion for judgment in their favor as matter of law. Neither does it appear that the trial court erred in denying appellants' motion for a new trial.

The judgment appealed from is affirmed.

MILLARD, STEINERT, BLAKE, JEFFERS, MALLERY, and CONNELLY, JJ., concur.

SIMPSON, J. (dissenting)—In *Lubliner v. Ruge,* 21 Wn. (2d) 881, 153 P. (2d) 694, the trial court refused to permit appellant's (plaintiff's) attorney to state to the jury and

prove that respondent (defendant) had been drinking intoxicating liquor. The trial court based its ruling upon the fact that appellant had not alleged in his complaint that the respondent, just before the time of the accident, had been drinking intoxicating liquor. In the instant case, the complaint did not make any charge that appellant had been drinking intoxicating liquor of any kind. In passing upon the question, this court in the above cited case stated:

"In deciding the question of pleading, we must take into consideration the foregoing rule; Rem. Rev. Stat., Vol. 7A, § 6360-119 [P. C. § 2696-877], making it unlawful to operate any vehicle upon a public highway while under the influence of or affected by the use of intoxicating liquor; the general rule that a pleading should allege ultimate facts, and not contain evidentiary matter; and that the adverse party should be apprised of that with which he is charged as a basis of liability with sufficient certainty so as to enable him to prepare for and meet it at the trial of the action. A violation of the statute is negligence as a matter of law. When the violation of a statute is relied upon as a basis of negligence, such statute need not be set forth in the pleading, but the facts making the statute applicable must be alleged. *Anderson v. Pantages Theatre Co.*, 114 Wash. 24, 194 Pac. 813. Evidence of being under the influence of or affected by the use of intoxicating liquor while driving an automobile or while doing any other act likely to do harm, is very damaging to one charged with negligence, and he should be informed of such charge so as to be able to gather and submit proof to the contrary. We, therefore, state the rule to be that, when a party to an action contemplates submitting affirmative proof that, by reason of the use of intoxicating liquor, there was thereby a contribution to some act or omission which it is alleged constituted negligence, such fact must be pleaded by such party. This was the ruling of the trial judge; and he was correct in such action."

The fact that Helen Edwards had visited a beer tavern was not a reason for asking her if she had been drinking. It is a well-known fact that many nondrinkers visit taverns in the company of friends. The majority opinion effectually does away with the rule announced in the cited case. Clearly, respondent's counsel had the right to ask appellant concerning her activities immediately preceding the acci-

dent, but the mere fact that she had been in a beer tavern did not give the right to inquire about drinking. The evidence as to the visit to the tavern was only incidental, while that relating to drinking intoxicating liquors went to the very essence of the charge of negligence. It certainly prejudiced the jury against her.

The court's instruction No. 7 reads as follows:

"The jury is instructed that the statutes of the State of Washington provide that where traffic control signals are not in place or in operation, the operator of a vehicle shall yield the right of way, slowing down or stopping, if need be, to so yield to any pedestrian crossing the roadway within a marked cross-walk of any intersection."

The majority opinion holds that the instruction was correct because it was given in the words of the statute. As I view the situation, the giving of an instruction in the words of the statute is not always correct. In *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533, this court had before it the interpretation of the statute which defines the rights and duties of drivers approaching a public highway intersection. Rem. Rev. Stat., § 6362-41 (14). In that case, this court did not hold that an instruction relative to the rights of the parties should be in the words of the statute, but held that the rights of way, as given by the statute, were relative, and that the duty to avoid accidents or collisions rested upon both drivers; further, that the primary duty of avoiding accidents rested upon the driver on the left. That rule should be applied to the statute under consideration in the instant case. The rights of pedestrians and automobile drivers are relative—that is, both must avoid accidents if possible, the primary duty, of course, being upon the driver of the automobile.

In *Tomchak v. Poland,* 185 Wash. 101, 52 P. (2d) 1262, this court stated:

"Under similar circumstances, judgment on a verdict for the plaintiff was reversed and the action ordered dismissed in *Jones v. Wiese,* 88 Wash. 356, 153 Pac. 330, because it was held as a matter of law, that plaintiff's contributory negligence precluded any recovery. In that case, it was said:

" 'When about to attempt a street crossing at such a place where danger is imminent and constant, pedestrians must take some precautions to guard against it. Something must be done to insure safety, and the failure to do so is such negligence as will prevent recovery in case of injury. As was said in *Cole v. Northern Pac. R. Co.*, 82 Wash. 322, 144 Pac. 34:

" ' "It is not necessary to here say what precautions are necessary. It cannot be denied that something must be done to insure safety."

citing cases announcing the rule in similar language.'

"To the same effect was the decision setting aside a judgment on a verdict and ordering the action dismissed in *Silverstein v. Adams*, 134 Wash. 430, 235 Pac. 784, the holding in that case being tersely stated in the syllabus, as follows:

" 'A pedestrian was guilty of contributory negligence in stepping from the curb to cross a street directly in front of an approaching automobile, with lights burning, where there was nothing to prevent his seeing the car.' "

In the *Lubliner* case, *supra*, this court in discussing an objection relative to an instruction, said:

"On this basis the instruction was correct, because even though a driver of an automobile unlawfully drives against a red light, a pedestrian cannot be excused if he negligently steps into its path."

These cases, in my opinion, have laid down the rule that the rights of car drivers and pedestrians at intersections are relative, and that the jury should be informed in the cases similar to the one at bar. Otherwise, if the instruction is given in the words of the statute, the driver of the automobile becomes the insurer of the safety of the pedestrian.

A new trial should be granted.

ROBINSON, J., concurs with SIMPSON, J.