### POWELL et ux. v. UTZ et ux.

### No. 842.

United States District Court
E. D. Washington, N. D.
Dec. 29, 1949.

812

Willard J. Roe, Spokane, Wash., for plaintiffs.

James Leavy, John Horrigan, Theodore Dare Peterson, Pasco, Wash., for defendants.

DRIVER, Chief Judge.

Defendants have moved to dismiss the complaint on the ground that it does not state a claim against them on which relief can be granted. The basis of this court's jurisdiction, diversity of citizenship of the parties, is sufficiently stated in the complaint. The allegations which set forth plaintiffs' claim to relief may be summarized briefly as follows:

Plaintiffs, husband and wife, are Negroes and citizens of the United States. On February 11, 1949 defendants were operating a restaurant which catered to the public, in Pasco, Washington. At about 1:30 P.M. on that day plaintiff Hazel Powell, better known as Hazel Scott, in company with another lady of the Negro race, entered the restaurant, seated herself at the lunch counter provided for the use of the customers, and requested that she and her companion be served food and drink. Defendants refused to serve them for the sole express reason that they were Negroes. The refusal was in the presence and hearing of others and it caused Mrs. Powell to suffer shame, humiliation and mental distress for which plaintiffs seek recovery of damages.

It is clear from the foregoing summary that plaintiffs have not stated a claim under the Fourteenth Amendment to the Federal Constitution. The prohibitions of that Amendment against deprivation of life, liberty or property without due process

of law or denial of the equal protection of the laws, apply only to state action and the invasion of the rights of one person by another who acts as a private individual does not come within its reach.[1] If plaintiffs have a right of recovery it must rest upon the civil rights statute of the State of Washington, Chapter 249, Section 434, Laws of 1909, Rem.Rev.Stat. § 2686, which in pertinent part reads as follows: "Every person who shall deny to any other person because of race, creed or color, the full enjoyment of any of the accommodations, advantages, facilities or privileges of any place of public resort, accommodation, assemblage or amusement, shall be guilty of a misdemeanor."

Although penal in form, the foregoing statute has been held by the Washington Supreme Court to be also remedial in effect so that a person deprived of the rights which it safeguards has a civil cause of action for damages against the wrongdoer.[2]

■ The question for determination, then, comes down to this: Is a restaurant a place of public accommodation within the meaning of the above quoted language of the Washington civil rights statute? An apposite decision of the question by the state Supreme Court would of course be binding on this court, but up to this time there has been no such decision. My task, then, is to conjecture, as best I can, what answer the state court would now give to the question, having in mind the implications of the cases in which that court has had the statute under consideration and the established principles of statutory construction by which the court would be guided.

My attention has been called to only four cases in which the civil rights statute, in its present form, has been before the state court for consideration. The court has held in two cases, Anderson v. Pantages Theatre Co. and Randall v. Cowlitz Amusements, Inc., cited in footnote 2, that theatres are places of public amusement and hence within the scope of the statute. In each case recovery of damages by a Negro who, after purchasing a ticket had been denied full enjoyment of the facilities of a theatre solely because of his race, was upheld. In Goff v. Savage, 122 Wash. 194, 210 P. 374, however, the court held that a soda fountain and ice cream stand within a drug store was not a place of public accommodation and denied a right of recovery of damages to a person whom the proprietor refused to serve a glass of soda water for the reason that he was a Negro. The fourth case, Finnesey v. Seattle Baseball Club, 122 Wash. 276, 210 P. 679, 680, 30 A.L.R. 948, involved a baseball park. Whether such an establishment was a place of public resort or amusement was not before the court for decision as there was "no allegation or proof that the [plaintiff's] ejection was because of race, creed, or color", but the court by way of dicta did express the view that the civil rights statute would not apply since the baseball park was a private rather than a public business. Thus the state court has taken the position that a theatre is a place of public amusement but a soda fountain is not a place of public accommodation. In Goff v. Savage the court stressed the requirement of the statute that the establishment must be a "public" one, and reasoned that since one operating a soda fountain has the right to contract or refuse to contract with prospective customers as he sees fit, the business is private, even though the general public is invited to enter the place where the business is carried on. The court endeavored to distinguish that kind of place from one such as a theatre where the customer buys an admission ticket. I do not see any sound basis for the distinction. A theatre owner, as well as a soda fountain operator, has the right to select his patrons

1. U. S. v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588; U. S. v. Harris, 106 U.S. 629, 1 S.Ct. 601, 27 L.Ed. 290; Civil Rights Cases, 109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835; Shelley v. Kraemer, 334 U. S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441.

2. Anderson v. Pantages Theatre Co., 114 Wash. 24, 27, 194 P. 813; Randall v. Cowlitz Amusements, Inc., 194 Wash. 82, 83, 76 P.2d 1017.

on a proper individual basis and may decline to serve those who are personally objectionable because of uncleanliness, disorderly conduct and the like. The only difference is that as to the theatre the selection is made at the entrance to the establishment whereas in the case of the soda fountain it is exercised after the patron has entered. The civil rights statute does not curtail the right to reject patrons on an individual basis since it applies only where the refusal to serve is because of race, creed or color.

Moreover, in the Pantages Theatre case the court was called upon to consider the effect of the circumstance that plaintiff Anderson had purchased and was the holder of an admission ticket at the time of his ejection. The contention was made that since Anderson had an admission ticket his action was based upon breach of contract and his recovery should be limited accordingly. It was held, however, that the action was grounded in tort. The court said that the purchase of the admission ticket was immaterial and that Anderson's right of action would not have been affected if he had applied for the purchase of a ticket at the theatre entrance and had been refused.[3]

Anderson v. Pantages was decided in January, 1921 and Goff v. Savage, November, 1922, was a later expression of the court, it is true. However, in March, 1938, in Randall v. Cowlitz Amusements, Inc., cited in footnote 2, without any mention of Goff v. Savage and without qualification or limitation the court followed Anderson v. Pantages.

Since the decisions of the Washington Supreme Court are not conclusive on the issue under consideration, resort must be had to the civil rights statute to determine whether it was the legislative intent to include within its reach a restaurant open to the general public. In doing so I have in mind that since it is in derogation of the common law and is penal in character the statute should be strictly construed.[4] However, while strict construction does not permit the extension of the import of the words of a statute by implication or for equitable considerations and confines its operation to cases clearly within the letter as well as the spirit of the law, it does not mean that its words shall be given their narrowest possible meaning. On the contrary, the words employed should be given their full, fair and sensible meaning in accord with the legislative intent.[5]

What, then, is the full, fair and sensible meaning of the words "public accommodation" in the Washington civil rights statute? According to Webster's dictionary, accommodation means "Whatever supplies a want or affords ease, refreshment, or convenience; anything furnished which is desired or needful; often in plural; as, the accommodations—that is, lodgings and food—at an inn." The same authority has this to say of the meaning of the word "public": 'Open to common or general use; specif.: a. Open to the use of the public in general for any purpose, as business, pleasure, religious worship, gratification of curiosity, etc. b. Open to the enjoyment of the public under the rights and liabilities belonging to an action, occupation, use, or

3. The following is an excerpt from the opinion, 114 Wash. at page 31, 194 P. at page 816 "* * * The cause of complaint is that the appellant, contrary to the right of the respondent and contrary to the positive mandate of the statute, refused the respondent admission to its place of amusement solely for the reason that he belonged to a colored race. This was a tort, and an action founded thereon lies in tort. The wrong would have been the same had the respondent applied to purchase a ticket and had been refused, in other words, the respondent has a cause of action because he was denied a right which the law specially confers upon him, and which the appellant could not deny without the breach of a public duty the law enjoins upon it."

4. See Goff v. Savage, cited in footnote 2.

5. Northern Securities Co. v. U. S., 193 U.S. 197, 24 S.Ct. 436, 48 L.Ed. 679; U. S. v. Betteridge, D.C., 43 F.Supp. 53, 56; 16 C.J.S., Construction, page 1514. See also 40 Words and Phrases, Perm.Ed., page 303.

the like, called public, as a *public* carriage, a *public* house, etc."

■ According to the foregoing dictionary definitions, "public accommodation" clearly includes a restaurant open to the general public. That meaning appears to be in accord with the legislative intent as to the scope of the statute. It may be assumed that the legislature had some purpose in mind when it included in the act the words "public accommodation." If it had intended to limit the operation of the law to places of public amusement or resort where tickets of admission are sold, it could easily have so provided in plain words. If the statute were to be construed to exclude any business establishment where at common law and in absence of statutory restrictions the proprietor has the right to govern the terms of his dealings with patrons by private contract, then no privately owned and operated place of business would be included, and the civil rights statute would be a farce and a sham. Manifestly, the legislature did not intend to limit the reach of the act to government owned and operated establishments.

■ In the construction of a statute which repeals a former act or contains a revision or codification of an earlier law, resort may be had to the repealed or superseded statute to aid in the discovery of the legislative intent.[6]

The first Washington legislature, after admission to statehood, enacted a civil rights act, Laws of 1889–90, Chap. XVI Miscellaneous, p. 524. It was in two sections. The first granted to all persons "full and equal enjoyment of the public accommodations, advantages, facilities and privileges of inns, public conveyances on land or water, theatres and other places of public amusement and restaurants, subject only to the conditions and limitations established by law and applicable alike to all citizens of whatever race, color or nationality." The second section of the law provided penalties for denial of the rights granted in the first section. In 1895 Section 1 was

amended, Laws of 1895, Chap. XCIX, p. 192, to read as follows: "All persons within the jurisdiction of the State of Washington shall be entitled to the full and equal enjoyment of the public accommodations and advantages, facilities and privileges of inns, restaurants, eating houses, barber shops, public conveyances on land or water, theaters and other places of public accommodation and amusement, subject only to the condition and limitations established by law and applicable alike to all citizens."

The 1895 Amendment, it should be noted, introduced a new term in the general designation of "other places," namely, "public accommodation." Also it is significant that, following the enumeration of particular establishments, among which were "restaurants, "eating houses" and "theatres", the legislature used the language "and other places of public accommodation and amusement," thereby indicating that it regarded restaurants and eating houses as places of public accommodation.

■ In 1909 the Washington legislature codified the criminal laws, Laws of Wash. 1909, Chap. 249. In the process it repealed the earlier civil rights act and in its place enacted the statute, Laws of 1909, Chap. 249, Sec. 434, p. 1027, Rem.Rev.Stat. § 2686, quoted earlier in this opinion. In this 1909 Code the civil rights act was condensed to one short paragraph. All specific designations of particular types of establishments in the earlier act, namely, "inns, restaurants, eating houses, barber shops, public conveyances on land or water, theaters," were omitted, and in broad, general terms the denial, because of race, creed or color, of the use and enjoyment of "any place of public resort, accommodation, assemblage or amusement" was denounced. Surely it may not be assumed that the legislature intended to exclude restaurants from the operation of the statute merely because the word "restaurants" was omitted, in view of the decisions of the Washington Supreme Court in Anderson v. Pantages Theatre Co. and Randall v. Cowlitz Amuse-

6. In re Eichler's Estate, 102 Wash. 497, 173 P. 435; Sandahl v. Department of Labor and Industries, 170 Wash. 380, 16

P.2d 623; In re Phillips' Estate, 193 Wash. 194, 74 P.2d 1015.

ments, Inc., supra, that the omission of the word "theatres" did not exclude that class of establishments. Moreover, as I have said, the present civil rights statute is part of a criminal code. The primary legislative purpose in codification is to simplify and clarify the wording of prior legislative enactments and to eliminate duplications, obsolete material and the like. It is unusual, to say the least, for the legislature in enacting a code to basically change prior laws without giving some clear indication as to what changes are intended. Here there is no indication that the legislature intended to narrow the scope of the civil rights act upon its inclusion in the Code of 1909. In fact, there is some indication to the contrary. While all the specific designations of places were dropped from the prior law, the general language of the old act, namely, "other places of public accommodation and amusement," was expanded in the new act to read: "any place of public resort, accommodation, assemblage or amusement," thus adding the designations "resort" and "asemblage" to the kinds of places within its coverage, I find no legislative intent to narrow and restrict the scope of the civil rights statute of 1909 so as to exclude a restaurant from its operation.

I have considered numerous cases decided by the courts of other states but have not found them very helpful. They are based upon statutes which differ materially in wording and legislative history from the one involved here. No case has been called to my attention in which a restaurant has been held to be covered by a statute which employs the broad, general designation, "place of public accommodation." Restaurants have been held in many cases to be within the operation of civil rights statutes, but in every such case the statute specifically named "eating houses" or "restaurants" as within its reach.[7] On the other hand, I am aware of no case in which a court of record has squarely held that a restaurant

is not a "place of public accommodation" within the meaning of a statute similar to the Washington act. Defendants cite State v. Brown, 112 Kan. 812, 212 P. 663, 31 A. L.R. 338, but the statute involved in that case had substantially different wording. There the Kansas Supreme Court had under consideration the question whether a restaurant was within the coverage of a penal statute which forbade discrimination on account of race or color in "any inn, hotel or boarding-house, or any place of entertainment or amusement for which a license is required by any of the municipal authorities of this state * * *." Gen. St.Kan. 1915, § 3791. The court held that a restaurant was not an inn, hotel or boarding-house within the meaning of the act.

It is my conclusion that a restaurant open to the general public is a place of public accommodation as that expression is used in the Washington Civil Rights statute, and defendants' motion to dismiss the complaint will accordingly be denied.

7. Crosswaith v. Bergin, 95 Colo. 241, 35 P.2d 848; Baer v. Washington Heights Cafe, Mun.Ct., 168 N.Y.S. 567; Humburd v. Crawford, 128 Iowa 743, 105 N.W. 330; Ferguson v. Gies, 82 Mich. 358, 46 N.W. 718, 9 L.R.A. 589, 21 Am.St.Rep.

576; Puritan Lunch Co. v. Forman, 29 Ohio C.A. 289, Deveaux v. Clemens, 17 Ohio Cir.Ct.R. 33, Horn v. Illinois Cent. R. R., 327 Ill.App. 489, 64 N.E.2d 574. See also Anno. 31 A.L.R. 339.